George M. ROMERO, Appellant,

v.

STATE of Alaska, Appellee.

No. A–2980.

Court of Appeals of Alaska.

June 8, 1990.

S. Joshua Berger, Fairbanks, for appellant.

John A. Scukanec, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

George M. Romero appeals after being convicted by a jury of guiding without a valid license, in violation of former AS 08.-54.210(a)(6). Under former AS 08.54.-210(b), the offense was a class C felony. Romero contends that the legislature did not intend this statute to apply to a person guiding with an expired license. Romero also alleges that the imposition of felony sanctions violated his right to equal protection. We reverse.

The relevant facts are undisputed. Romero worked as a licensed assistant guide from 1980 through 1986. Late in 1986, he applied for a registered guide's license and took the examination. Although he received a failing score, he filed an administrative appeal and eventually prevailed.

On December 31, 1986, however, while his administrative appeal was pending, Romero's assistant guide's license expired, and he failed to renew it. In mid-August of 1987, Romero guided some hunters on a sheep hunt. It was not until several days later, on August 24, 1987, that he renewed his assistant guide's license.

The state charged Romero for guiding without a valid license in violation of former AS 08.54.210(a)(6). Prior to trial, Romero moved to dismiss on various grounds. At a hearing before Superior Court Judge Mary E. Greene, Romero argued that the prohibition against guiding without a valid license was not meant to apply to guides whose license had merely expired. This argument had not been raised in Romero's written motion. Although the point was raised for the first time at the hearing, Judge Greene considered it on its merits, together with the claims that Romero had submitted in writing. Judge Greene issued a written order denying Romero's motion to dismiss "on all bases raised." Romero was later tried and convicted.

On appeal, Romero renews his claim that former AS 08.54.210(a)(6) was not meant to cover expired guiding licenses. In response, the state first asserts that Romero forfeited this claim by failing to address it in his written motion to dismiss below. Despite the arguable untimeliness of Romero's argument, however, Judge Greene considered and denied it on its merits. The argument presents an issue of law, not fact, and the state has had a full opportunity to brief it. Under the circumstances, we see no justification for finding a forfeiture. *See, e.g., Best v. Anchorage,* 712 P.2d 892, 895 (Alaska App.1985).

We thus turn to the merits. At the time of Romero's alleged offense, the statutory provision under which he was convicted, AS 08.54.210(a)(6), made it unlawful "to guide without being validly licensed as a guide under this chapter...." Under subsection (b) of AS 08.54.210, the legislature prescribed felony sanctions for violations of subparagraphs (a)(6)–(8). Romero contends that, in specifying felony sanctions for guiding without a valid license, the legislature intended to include only those offenders who had not been issued a guide's license. Romero cites various items of legislative history in support of his argument. The state replies that the words "validly licensed as a guide," as used in subparagraph (a)(6), are plain on their face and must be read to include all situations involving either persons never licensed to guide or persons who were previously licensed but whose licenses expired or became ineffective for any reason.

While the statutory terminology "validly licensed as a guide" may seem clear in isolation, we believe that its meaning must be considered in the context of former AS 08.54.210 as a whole. That statute provided:

> *Unlawful acts.* (a) It is unlawful for
> (1) a master guide, registered guide, special guide, class A assistant guide, or assistant guide to fail to timely report to the Department of Public Safety, division of fish and wildlife protection, and in no event later than 30 days, a violation of a state fish, game, or guiding statute or

regulation that the guide reasonably believes was committed by a client or an employee of the guide;

(2) a guide to commit or aid the commission of a violation of this chapter or of a state game or guiding statute or regulation or to permit the commission of a violation that the guide knows or reasonably believes is being or will be committed without attempting to prevent it, short of using force, and without reporting it;

(3) a person to guide without having a current valid guide license and resident hunting license in actual possession;

(4) a person to advertise as or represent to be a guide without holding a current valid guide license;

(5) a guide to intentionally obstruct or hinder or attempt to obstruct or hinder lawful hunting engaged in by a person who is not a client of the guide;

(6) a person to guide without being validly licensed as a guide under this chapter and as a resident hunter under AS 16;

(7) an assistant guide to contract to conduct a guided hunt;

(8) an assistant guide to be in the field on a guided hunt except while employed and supervised by a registered or master guide.

(b) A person who violates (a)(1)–(5) of this section is guilty of a misdemeanor and upon conviction is punishable by a fine of not more than $1,000 or by imprisonment for not more than one year, or by both, and the person's license may be revoked for a period up to five years. However, a person who engages in guiding activity during the period for which the person's license is suspended or revoked under this chapter, or who violates (a)(6)–(8) of this section, is guilty of a felony punishable, upon conviction, by a fine of not more than $5,000 and by imprisonment for not less than one year nor more than three years. In addition to punishment for a felony, all guns, fishing tackle, boats, aircraft, automobiles or other vehicles, camping gear and other equipment and paraphernalia used in, or in aid of, guiding activity engaged in during the period of suspension or revocation may be seized by persons authorized to enforce this chapter and may be forfeited to the state as provided under AS 16.05.195.

Two aspects of this statute bear relevance on the state's proposed interpretation of subparagraph (a)(6). First, subparagraphs (a)(3) and (4) speak of guiding without a *"current* valid license" (emphasis added). These references to both the currency and validity of a license imply a distinction between the two terms, suggesting that a guide's license may be valid without being current. To conclude otherwise would be to assume that the legislature used superfluous language, an assumption that we should not lightly make.

Second, it is significant that subsection (b) of the statute, in addition to imposing felony sanctions for violations of subparagraphs (a)(6)–(8), separately extends felony status to offenders who guide while their licenses are "suspended or revoked under this chapter." If, as the state contends, no one could be deemed "validly licensed" for purposes of subparagraph (a)(6) without having a currently valid guide's license—in other words a license actually in effect at the time—then the legislature's specific provision of felony sanctions for persons guiding with suspended or revoked licenses would also be superfluous, for offenders guiding with suspended or revoked licenses would not be "validly licensed," and they would therefore be subject to prosecution under subparagraph (a)(6).

The specific statutory references to persons guiding without a "current valid license" and to persons guiding while their licenses are suspended or revoked raise questions concerning the meaning of the words "validly licensed" and cast doubt on the state's proposed interpretation of subparagraph (a)(6). The ambiguity is amplified when former AS 08.54.210 is viewed in the context of the entire statutory scheme in which it appeared.

Title 8, chapter 54, of the Alaska Statutes deals with licensing and regulation of hunting guides. At the time of Romero's

alleged offense, the chapter provided for four levels of guides licenses: master guide, registered guide, class A assistant guide, and assistant guide. Former AS 08.54.100–.141. An applicant for a guide's license was required to meet certain statutory qualifications, depending upon the level of the license applied for. *Id.* After becoming licensed, guides were required to renew their licenses biennially and to pay license fees. AS 08.01.100(a).

It is significant, however, that mere failure to renew did not result in the extinguishment of a guide's license. To the contrary, under the express provisions of former AS 08.54.190, all classes of guides were protected against automatic extinguishment of their licenses through lack of renewal: assistant guides and class A assistants who failed to renew were guaranteed automatic renewal and protected against having to go through the qualification process anew as long as they applied for renewal within two years of the expiration date of a previously issued license; registered and master guides were guaranteed automatic renewal in perpetuity. *Id.* Given this statutory protection, it is apparent that a guide who was issued a license and allowed it to expire did not revert back to the same status as a new applicant. By the same token, a license that was issued but not renewed did not entirely lapse. Conceptually, the licensee could be viewed as continuing to hold a license that was simply not current, and the license, while not current, could be viewed as continuing to have validity.

This possible interpretation of the statutory provisions might, in turn, explain the apparent distinction between a valid license, as referred to in AS 08.54.210(a)(6), and a "current" valid license, as referred to in AS 08.54.210(a)(3) and (4). The interpretation would similarly explain the specific reference in AS 08.54.210(b) to offenders guiding with suspended or revoked licens-

es. Presumably, the legislature could have believed that, absent specific mention, one whose license was suspended or revoked might successfully argue that it was still valid but not current.

■ It is well settled that a penal statute must be construed strictly and that ambiguities must be resolved against the state. *See, e.g., State v. Rice,* 626 P.2d 104, 108 (Alaska 1981); *Brookins v. State,* 600 P.2d 12, 17 (Alaska 1979); *State v. Jones,* 750 P.2d 828, 831 (Alaska App.1988); *State v. Andrews,* 707 P.2d 900, 907 (Alaska App.1985). Here, a contextual reading of the challenged statutory provision gives rise to a substantial ambiguity and leaves open the possibility that the legislature did not intend to impose felony sanctions against guides whose licenses had merely expired.[1] To the extent that there is doubt, that doubt must be resolved in favor of Romero.[2]

The conviction is REVERSED.

---

**1.** We note that this ambiguity appears to have been resolved under the current statute governing unlicensed guiding. The current corollary to former AS 08.54.210(a)(6) is AS 08.54.-520(a)(7), which expressly prohibits guiding without a "current" license. Violation of this provision, however, is punishable as a misdemeanor for first offenders and as a felony only for second or subsequent offenders.

**2.** Our disposition makes it unnecessary to decide Romero's equal protection claim.