**Benjamin EPPENGER, Jr., Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–6554.**

Court of Appeals of Alaska.

Nov. 6, 1998.

Shelley K. Chaffin, Law Office of Shelley K. Chaffin, Anchorage, for Appellant.

John A. Scukanec, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, C.J., and MANNHEIMER and STEWART, JJ.

COATS, Chief Judge.

The question raised by this case is whether a defendant can be convicted of vehicle theft in the first degree if he obtains the vehicle with the oral permission of the owner. We conclude that, although the wording of the statute would seem to support such a conviction, the legislative history of the statute indicates that the legislature did not intend this result.

Following a jury trial, Benjamin Eppenger, Jr., was convicted of vehicle theft in the first degree, a class C felony. The statute governing first-degree vehicle theft, AS 11.46.360(a)(1), provides in relevant part:

A person commits the crime of vehicle theft in the first degree if, having no right to do so or any reasonable ground to believe the person has such a right, the person drives, tows away, or takes ... the car ... of another[.]

At trial, the defense theory of the case was that Knutsen, the owner of the vehicle, had given Eppenger permission to use his car for a few hours in exchange for what appeared to be cocaine. Two witnesses testified to this effect, in support of Eppenger's theory. The defense theorized that Knutsen reported his car was stolen only after discovering that the substance given to him by Eppenger was not cocaine.

Eppenger asked the court to instruct the jury that he could not commit the offense of first-degree vehicle theft if the jury found that Knutsen had given him permission to use the car. The court rejected Eppenger's contention and instructed the jury essentially using the language of the statute.

During deliberations, the jury sent a note to the court, asking:

If a person is given verbal permission to use a car and asked to return the vehicle within a certain time frame, what is the elapsed time after the requested return that the vehicle is considered stolen[?]

Over Eppenger's objection, the court gave the following instruction:

The vehicle is considered stolen if the user drives it at any time after he knows or, but for his own recklessness, should know that his permission to use it has expired, unless he is driving it for the purpose of returning it to the person who gave him permission to use it.

The jury found Eppenger guilty of first-degree vehicle theft.

On appeal, Eppenger renews his contention that a defendant who initially obtains a car with the oral permission of the owner cannot be convicted of vehicle theft, even if

he later fails to return the vehicle. In support of his argument, Eppenger points to AS 11.46.365(a)(2), the definition of vehicle theft in the second degree, a class A misdemeanor. The statute provides in part:

> (a) A person commits the crime of vehicle theft in the second degree if, having no right to do so or a reasonable ground to believe the person has such a right,
>
> (2) having custody of a propelled vehicle under a written agreement with the owner of the vehicle that includes an agreement to return the vehicle to the owner at a specified time, the person knowingly retains or withholds possession of the vehicle without the consent of the owner for so long a period beyond the time specified as to render the retention or possession of the vehicle an unreasonable deviation from the agreement.[1]

Eppenger argues that it does not make sense for the legislature to provide that a person who obtains custody of a car under a written agreement and then fails to return it would face conviction of a misdemeanor offense but would face conviction of a felony offense if he obtained the car under a verbal agreement.

When we interpret a statute we use our independent judgment to determine the meaning of the statutory language.[2] We construe the statute "to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others."[3] In Alaska,

> [we do] not enforce the traditional "plain meaning" rule of statutory construction (the rule that, if the wording of a statute is "plain," then courts will look no further to determine the legislature's intention). However, when the wording of a statute is apparently clear, a litigant . . . who argues

for a different construction of the statute bears a heavy burden of demonstrating that the legislature intended something different from what the words would normally mean.[4]

The plain language of AS 11.46.360(a) criminalizes driving a vehicle if the defendant has "no right to do so or any reasonable ground to believe [that he] has such a right[.]" The language of the statute appears to criminalize this conduct even if the defendant originally obtained the vehicle with permission. Yet we agree with Eppenger that it does not seem reasonable that the legislature intended to treat this conduct as a felony when it provided, in a related statute, that unreasonable retention of a car under a written agreement would be punishable as a misdemeanor.[5] We have accordingly investigated the legislative history of these statutes to determine the legislative intent.

In 1975, the legislature created the Alaska Code Revision Commission.[6] As part of the Code Revision Commission, the legislature established a subcommission on criminal law.[7] The purpose of the subcommission was to prepare and recommend a comprehensive criminal code draft for the State of Alaska.[8] The subcommission on criminal law prepared the Tentative Draft, which was published in 1977 and 1978. The legislature modified the Tentative Draft creating Alaska's current Criminal Code.[9] Various sections of the Criminal Code have since been amended by the legislature. Tracking the history of AS 11.46.360 and the amendments to the statute is helpful in determining what conduct the legislature intended to criminalize when it enacted the disputed statute.

---

1. AS 11.46.365(a)(2).

2. *See Manes v. Coats*, 941 P.2d 120, 125 (Alaska 1997); *Cummings v. Sea Lion Corp.*, 924 P.2d 1011, 1019 n. 11 (Alaska 1996).

3. *Muller v. BP Exploration (Alaska) Inc.*, 923 P.2d 783, 787 (Alaska 1996) (quoting *Tesoro Alaska Petroleum Co. v. State*, 746 P.2d 896, 905 (Alaska 1987)).

4. *Tallent v. State*, 951 P.2d 857, 860 (Alaska App.1997) (citations omitted).

5. *See* AS 11.46.365(a)(2).

6. *See* Alaska Criminal Code Revision Part I, at 3 (Tent. Draft 1977); ch. 114, § 1, SLA 1976.

7. *See* ch. 114, § 2, SLA 1976.

8. *Id.*

9. *See Neitzel v. State*, 655 P.2d 325, 327 (Alaska App.1982) (explaining the history of the Criminal Code).

Alaska Statute 11.46.360(a) (motor vehicle theft in the first degree) and AS 11.41.365 (motor vehicle theft in the second degree) were originally combined in the Tentative Draft as follows:

AS 11.46.240. UNAUTHORIZED USE OF A PROPELLED VEHICLE.

(a) A person commits the crime of unauthorized use of a propelled vehicle if

(1) knowing that he does not have the consent of the owner, he takes, operates, exercises control over or otherwise uses another's propelled vehicle;

. . .

(3) having custody of a propelled vehicle under an agreement with the owner of the vehicle in which he has agreed to return the vehicle to the owner at a specified time, he knowingly retains or withholds possession of the vehicle without the con- sent of the owner for so long a period beyond the time specified as to render the retention or possession of the vehicle an unreasonable deviation from the agree- ment.[10]

The commentary to the Tentative Draft ex- plained the provisions as follows:

While subsection (1) covers the most typical joyriding situations, subsection [ (a)(3) reaches] conduct involving exces- sive misuse or withholding of a vehicle by a person who originally obtained possession of the vehicle legally. This type of conduct is limited [as follows.] [AS 11.46.240(a)(3) ] is illustrated by a person who borrows a car in Anchorage for an afternoon and drives it down the AlCan. In [such a] case, the conduct must consti- tute an "unreasonable deviation" from the agreement[.] [11]

The Tentative Draft § 11.46.240(a)(3) did not distinguish between a verbal or written agreement as a means to obtain the vehicle. However, when the legislature enacted this provision of the Tentative Draft as AS 11.46.484, criminal mischief in the third de- gree, a class A misdemeanor, it limited the crime to instances in which the defendant obtained the vehicle via a written agreement:

(a) A person commits the crime of crimi- nal mischief in the third degree if, having no right to do so or any reasonable ground to believe the person has such a right

. . .

(2) the person drives, tows away, or takes the propelled vehicle of another;

(3) having custody of a propelled vehicle under a *written* agreement with the owner of the vehicle that includes an agreement to return the vehicle to the owner at a specified time, the person knowingly re- tains or withholds possession of the vehicle without the consent of the owner for so long a period beyond the time specified as to render the retention or possession of the vehicle an unreasonable deviation from the agreement;

. . .

(Emphasis added.) This offense is now codi- fied in AS 11.46.365(a)(2), but the language remains the same. That is, only a written agreement is covered by the statute. It seems illogical to us that the legislature would choose to address verbal agreements under AS 11.46.484(2) but address written agreements under AS 11.46.484(3). It seems to us that the legislature must have deter- mined that verbal agreements should not be covered by the statute. The legislature pos- sibly determined that verbal agreements for the use of a vehicle were generally between friends and that the terms of the agreements would be difficult to prove. The legislature could have determined that these verbal agreements were not as appropriate for treatment under the criminal law as viola- tions of written agreements, where the terms of the agreement were easier to prove and the agreements generally took place in a commercial setting.

In 1996, the legislature repealed former AS 11.46.484(a)(2) and former AS 11.46.484(a)(3), and recodified them as AS 11.46.360 (vehicle theft in the first degree) and AS 11.46.365, (vehicle theft in the second degree), respectively.[12] We believe that the

10. Alaska Criminal Code Revision Part III, at 10–11 (Tent. Draft 1977).

11. *Id.* at 44–45.

12. *See* ch. 71, §§ 1, 11, SLA 1996.

legislative history of these statutes reveals that the legislature did not intend for AS 11.46.484(a)(2) to criminalize the conduct of a person who obtained a vehicle under the authority of a verbal agreement. This conclusion is further strengthened by the rule of statutory construction that criminal statutes should be strictly construed against the government.[13]

We accordingly conclude that Eppenger could not be convicted of vehicle theft in either the first or second degree because he obtained the vehicle via an oral agreement with the owner.

The conviction is REVERSED.

MANNHEIMER, Judge, concurring.

By accurately reciting the legislative history of AS 11.46.360—365, Judge Coats's opinion points out the problems with the State's position in this appeal.

The State argues that if a person takes lawful temporary possession of a vehicle under an oral agreement (in this case, an informal agreement between friends) and then the person knowingly retains the vehicle for any length of time (no matter how short) past the agreed-upon hour for returning the vehicle, the person commits a felony—the crime of first-degree vehicle theft. The State asserts that such conduct falls within the statutory prohibition against "driv[ing] ... or tak[ing]" the vehicle of another when one has "no ... reasonable ground to believe [that one] has ... a right [to do so]". AS 11.46.360(a)(1).

The problem with the State's position is that, in AS 11.46.365(a)(2), the legislature has declared that when a person initially takes temporary possession of a vehicle under a *written* agreement (that is, a more formal agreement) and then knowingly retains the vehicle "for so long a period beyond the time specified as to [constitute] an unreasonable deviation from the agreement", the person commits a misdemeanor—the crime of second-degree vehicle theft. The legislature's enactment of AS 11.46.365(a)(2) undercuts the State's argument in two ways.

First, the presence of section 365(a)(2) suggests that the State can not be correct in its reading of section 360(a). The State asserts that the phrase used in 360(a), "drives ... or takes [a vehicle]", was intended to cover the conduct of any person who initially takes temporary possession of a vehicle lawfully but then fails to return the vehicle as promised. If this were true, then the legislature would seemingly have no need to enact AS 11.46.365(a)(2), a section that deals specifically with people who take temporary possession of a vehicle under a written agreement—and that imposes a lesser punishment for their crime. The legislature's enactment of this second statute strongly suggests that the words "drives" and "takes" in section 360(a) were intended to refer to the defendant's *initial* act of driving or taking the vehicle of another. Reading the two statutes (sections 360 and 365) in combination, it appears that the crime of first-degree vehicle theft requires proof that the defendant's initial taking of the vehicle was trespassory.

But even if this were not so—that is, even if section 360(a) could be interpreted to cover people who initially take possession of a vehicle with the owner's permission but then exceed the scope of the granted permission— this still leaves the State in the difficult position of arguing (1) that the legislature wanted to inflict felony punishment on people who take possession of a vehicle under an informal, oral agreement between friends and then fail to return the vehicle by the very minute promised, but (2) the legislature wanted to inflict only misdemeanor punishment on people who take possession of a vehicle under a written agreement (most commonly, a commercial rental agreement) and then retain the vehicle "for so long a period beyond the time specified as to render the retention or possession of the vehicle an unreasonable deviation from the agreement". This simply does not make sense.

The drafters of the Tentative Draft proposed to punish, under a single section of the criminal code, all persons who took temporary possession of a vehicle under any agree-

**13.** See *Romero v. State*, 792 P.2d 679, 682 (Alaska App.1990); *State v. Andrews*, 707 P.2d 900, 907 (Alaska App.1985); Norman J. Singer, *Suther-*

*land Statutory Construction*, §§ 59.03, 59.04, 59.06 (4th ed.1986 rev.).

ment—either oral or written—and then failed to return the vehicle for so long a period of time as to constitute an unreasonable deviation from the terms of the agreement. The legislature amended this proposal by inserting the adjective "written" to modify the noun "agreement". The State would have us infer that the legislature, by this amendment, indicated a desire to increase the punishment for those who violate, even if only slightly, an oral agreement for temporary possession of a motor vehicle, and a concomitant desire to reduce the punishment for those who violate written agreements—indeed, a desire not to punish these people at all if their deviation from the written agreement was *de minimis*. Given the importance that our society has traditionally accorded to written agreements, the State's position must be rejected.

For these reasons, I join in the majority's decision.