Donald R. DOBBERKE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–7561.

Court of Appeals of Alaska.

Feb. 8, 2002.

Paul E. Malin, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Maarten Vermaat and Kim S. Stone, Assistant Attorneys General, Office of Special Prosecutions and Appeals, Anchorge, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

STEWART, Judge.

A jury convicted Donald R. Dobberke of first-degree vehicle theft.[1] However, we conclude that the jury instructions constituted plain error because they failed to specify that Dobberke's initial taking of the car had to be trespassory. Therefore, we reverse Dobberke's conviction.

### Facts and Proceedings

On August 7, 1998, Dobberke rented a 1996 Mercury Mystique from the Hertz Rent–A–Car franchise in Kenai for three days. Superior Oilfield Logistics, a corporation, owns the franchise; Dan VanZee owns the corporation.

Dobberke kept the Mercury beyond the three-day rental period, but he did not sign another rental contract. Instead, VanZee allowed Dobberke to extend the rental agreement on several occasions when Dobberke brought cash or money orders to the franchise. VanZee filled out new forms each month from September through February 1999 showing that Dobberke rented the Mercury, but these forms were not signed by Dobberke.

By early October, Dobberke was behind on the payments and had not come to the franchise in about two weeks. VanZee called Dobberke, but the phone had been disconnected. VanZee drove to the address provided by Dobberke, but he did not believe anyone was living there. VanZee called the police and asked for their assistance locating the car.

The Kenai police went to Dobberke's house and left a note with a roommate about the car. Shortly thereafter, Dobberke went to Hertz and paid up on his rental. VanZee allowed Dobberke to continue using the Mercury. Dobberke told VanZee that he planned to purchase the Mercury after he obtained financing for his business.

In late October, Dobberke sent VanZee a note stating that he wanted VanZee to prepare a sales contract for the car. VanZee prepared a purchase order agreement. He testified that such a document is often necessary for buyers to obtain financing.

In early November, VanZee saw Dobberke at a real estate agency and told him the paperwork was ready. On November 3, Dobberke went to the Hertz office and signed the purchase order agreement. Dobberke told VanZee that he was going to the bank to have a check issued and he would be right back. VanZee testified that he thought Dobberke had financing and would be back within the hour. However, Dobberke did not return.

The next day, VanZee went on a ten-day trip. When he returned, he could not locate Dobberke, so he called the Kenai police to report that the car was again missing. On December 3, VanZee saw the Mercury at the Kenai Pawnshop. He called the police and then drove around the block. When he came around the block again, the car was gone. The police told VanZee that his problem was a civil matter, but VanZee testified that it was his car and "for me to have to go to court to get my vehicle back seemed a little ridiculous."

On February 6, 1999, the police received a report of Dobberke driving the missing car in Kenai heading toward Nikiski. The police stopped Dobberke, and he followed them in the Mercury to the police department. Dobberke told the police that he was still trying to obtain financing for the car, but it was taking longer than he expected. The police eventually let Dobberke leave with the car and then called VanZee. VanZee called his tow truck driver and told him to go to Dobberke's house and take possession of the car.

---

1. AS 11.46.360(a)(1).

According to VanZee, "the Kenai police had given me an address on a couple of occasions, the Beacon Apartments in north Kenai ... I felt Mr. Dobberke was headed there...." The tow truck driver went to the Beacon Apartments and located the car, but he told VanZee he was uncomfortable towing it away. VanZee then went personally to the Beacon Apartments and took possession of the car.

On March 5, 1999, a grand jury indicted Dobberke on one count of first-degree vehicle theft,[2] one count of second-degree theft,[3] and one count of failure to return a rental vehicle.[4] The State amended the indictment on July 7, 1999, charging Dobberke only with first-degree vehicle theft.

After the State's case-in-chief, Dobberke moved for a judgment of acquittal based on this court's decision in *Eppenger v. State*.[5] Superior Court Judge Charles K. Cranston denied the motion. Dobberke did not present a case and did not object to the jury instructions. Dobberke now appeals.

*Discussion*

*Should the court have granted Dobberke's acquittal motion?*

Dobberke claims that the superior court should have granted his motion for judgment of acquittal. According to Dobberke, *Eppenger* stands for two propositions. First, an individual cannot be prosecuted for either first- or second-degree vehicle theft if the person took the car pursuant to an oral agreement. And second, an individual cannot be prosecuted for first-degree vehicle theft if the person took the car pursuant to a written agreement. Dobberke argues that his case involved both oral and written agreements, and regardless of which was control-

ling on November 3, prosecution for first-degree vehicle theft was inappropriate because he obtained the Mercury with Van-Zee's consent.

In *Eppenger*, we discussed the legislative history of the first-degree and second-degree vehicle theft statutes.[6] We noted that the plain language of AS 11.46.360(a) appears to criminalize driving a vehicle "even if the defendant originally obtained the vehicle with permission."[7] However, we agreed with Eppenger that "it does not seem reasonable that the legislature intended to treat this conduct as a felony when it provided, in a related statute, that unreasonable retention of a car under a written agreement would be punishable as a misdemeanor."[8] Judge Mannheimer's concurrence also suggested that the initial taking of the vehicle had to be "trespassory."[9]

 Dobberke argues the superior court should have granted a judgment of acquittal because, since he obtained possession of the Mercury with VanZee's permission, his taking could not be "trespassory." However, it is clear that, at common law, one who fraudulently obtains possession of property has committed a trespassory taking.[10] Although the evidence showed that Dobberke obtained the Mercury with VanZee's express or implied permission, a fair-minded juror could conclude from the evidence presented and the reasonable inferences arising from the evidence that Dobberke fraudulently obtained VanZee's consent to take the Mercury.[11] Thus, we uphold the denial of Dobberke's motion for judgment of acquittal.

*Was the jury properly instructed on the elements of first-degree vehicle theft?*

 Dobberke did not object to the jury instructions in the superior court. Neverthe-

---

**2.** AS 11.46.360(a)(1).

**3.** AS 11.46.100(1) & AS 11.46.130(a)(1).

**4.** AS 28.35.026.

**5.** 966 P.2d 995 (Alaska App.1998).

**6.** *Id.* at 996–98.

**7.** *Id.* at 996.

**8.** *Id.*

**9.** *Id.* at 998 (Mannheimer, J., concurring). *See also Allridge v. State*, 969 P.2d 644, 646 (Alaska App.1998).

**10.** *See* R. Perkins & R. Boyce, *Criminal Law* (3rd ed.1982), pp. 303–07; W. LaFave and A. Scott, *Substantive Criminal Law* (1986), §§ 8.1(a) & 8.2(a), Vol. 2, pp. 333–36.

**11.** *See Dorman v. State*, 622 P.2d 448, 453 (Alaska 1981); *Deal v. State*, 657 P.2d 404, 405 (Alaska App.1983).

less, Dobberke argues that Judge Cranston committed plain error when he failed to instruct the jury that Dobberke's initial taking of the Mercury must have been trespassory for the jury to convict him of first-degree vehicle theft. In the context of jury instructions, an appellate court will only find plain error where the erroneous instruction or lack of instruction "creates a high likelihood that the jury followed an erroneous theory[,] resulting in a miscarriage of justice." [12]

Although we did not directly hold in *Eppenger* that the initial taking of a car must be trespassory for a person to be liable for first-degree vehicle theft, Judge Mannheimer's concurrence suggested that requirement.[13] Now that we directly face that question, we adopt the reasoning advanced in Judge Mannheimer's concurrence in *Eppenger.*

■ Under AS 11.46.360(a)—first-degree vehicle theft—it is a felony to knowingly drive, tow away, or take a car belonging to another while having no right or reasonable belief in a right to do so. On its face, this seems to include cases where the original taking was nontrespassory but the defendant later drove the vehicle without a right or reasonable belief in a right to drive the vehicle. However, the legislature also enacted AS 11.46.365(a)(2)—second-degree vehicle theft—which made it a misdemeanor to retain a vehicle beyond the time specified in a written agreement for so long a time that the retention became an unreasonable deviation from the agreement. The enactment of section 365(a)(2) indicates that the legislature must have intended for the "drives, tows away, or takes" language in section 360(a) to refer to a defendant's *initial* act of driving, towing away, or taking and thereby to limit section 360(a) to cases where the original taking was trespassory. Otherwise, there would be no need for the second-degree vehicle theft statute; it would be subsumed into the first-degree vehicle theft statute, and even those takings that fit under section 365(a)(2) could be prosecuted as first-degree

vehicle theft. Accordingly, in first-degree vehicle theft cases, the State must prove that the defendant's initial taking of the vehicle was trespassory.

■ Here, VanZee testified that he gave Dobberke permission to take the car to the bank, and the State conceded that Dobberke had Van Zee's permission in its closing argument. Judge Cranston instructed the jury as follows:

> A person commits the crime of vehicle theft in the first-degree if, having no such right to do so or any reasonable ground to believe he had such a right, the person knowingly drives, tows away or takes a car belonging to another.
>
> In order to establish the crime of ... vehicle theft in the first degree, it is necessary for the state to prove beyond a reasonable doubt the following:
>
> First, that the event in question occurred at or near Kenai and on or about November 1998 through February 1999;
>
> Second, that Donald R. Dobberke, having no such right to do so or any reasonable ground to believe he had such a right, did knowingly drive, tow away or take a car belonging to another.

Although the jury instruction correctly quoted the statutory language, the statutory language is misleading because, as stated above, the legislature only intended for the first-degree vehicle theft statute to apply to takings that were initially trespassory.

In this case, the judge should have specifically instructed the jury that Dobberke's *initial* taking had to be trespassory to convict Dobberke of first-degree vehicle theft. Instead, the judge instructed the jury that it could find Dobberke guilty of first-degree vehicle theft if it found that Dobberke drove the car at any point between November and February when he did not have a right to drive the car or any reasonable ground to believe he had a right to drive the car. This jury instruction did not require that the jury find Dobberke's initial taking trespassory

**12.** *Matter of Estate of McCoy,* 844 P.2d 1131, 1134 (Alaska 1993) (quoting *Holiday Inns of Am., Inc. v. Peck,* 520 P.2d 87, 91 (Alaska 1974)); *Heaps v. State,* 30 P.3d 109, 114 (Alaska App. 2001).

**13.** *See Eppenger,* 966 P.2d at 998 (Mannheimer, J., concurring).

and, accordingly, the instruction was erroneous.

The State argues that the jury might have believed the initial taking of the car was trespassory, and, therefore, there was not a high likelihood that the jury followed an erroneous theory. However, the prosecutor argued to the jury that it did not matter that Dobberke had permission to take the car when he left with it on November 3. Because the jury instructions did not impose a requirement that Dobberke's initial taking be trespassory, and because of the way this case was presented and argued to the jury, we conclude there is a high likelihood that the jury convicted Dobberke without finding that his initial taking of the Mercury was trespassory. Under these facts, we conclude that the jury instructions constituted plain error.

*Is the first-degree vehicle theft statute vague or overbroad?*

Lastly, Dobberke claims the vehicle theft statute is overbroad as applied to his case because it effectively criminalizes failure to pay a debt. He argues that imprisonment for failure to pay a debt is prohibited by article I, section 17 of the Alaska Constitution. In addition, he claims the statute is vague because it does not clearly inform individuals that their contractual obligations can be subject to criminal prosecutions.

We reject Dobberke's argument that the statute is overbroad. Alaska Statute 11.46.360(a) provides that "[a] person commits the crime of vehicle theft in the first degree if, having no right to do so or any reasonable ground to believe the person has such a right, the person drives, tows away, or takes (1) the car ... of another." However, as stated above, we now hold that individuals can only be prosecuted for first-degree vehicle theft if the initial taking was trespassory. The statute does not apply to mere failure to pay a debt, and therefore, the statute is not overbroad.

Dobberke also argues that the statute is vague because a person of ordinary intelligence would not realize AS 11.46.360(a) applies to someone keeping a rental car too long. But our holding resolves this issue because individuals cannot be convicted for first-degree vehicle theft for keeping a rental car too long unless their initial taking was trespassory. The statute is not unconstitutionally vague.

Because we reverse Dobberke's conviction, we need not consider his other claims.

*Conclusion*

The judgment of the superior court is REVERSED.