Andy N. RITTER, Appellant,

v.

STATE of Alaska, Appellee.

No. A–6983.

Court of Appeals of Alaska.

Jan. 19, 2001.

Kathleen A. Murphy, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Marcelle K. McDannel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

### OPINION

MANNHEIMER, Judge.

This appeal presents us with two important questions of law.

The first question concerns the proper scope of a *Cooksey* plea—a plea of no contest, with the defendant preserving the right to raise a dispositive issue on appeal. Specifically, we are asked to decide whether a *Cooksey* plea can be valid when the issue preserved for appeal is the sufficiency of the evidence at grand jury. Subject to a potential exception that we explain below, we hold that the sufficiency of the evidence at grand jury is not a dispositive issue, and thus it is not a proper basis for a *Cooksey* plea.

The second question concerns the proper interpretation of AS 11.41.420(a)(4). This portion of the second-degree sexual assault statute prohibits certain health care workers from engaging in sexual contact with their patients if the health care worker knows that the patient "is unaware that a sexual act is being committed". Ritter argues that only those patients who are unconscious (or, for some other reason, have no physical perception of being touched) can be deemed "unaware" for purposes of this statute. The State argues that the statute also includes patients who physically perceive the touching but who are "unaware" that the touching is for a sexual purpose and not a proper treatment purpose. With certain qualifications that we explain below, we · agree with the State that AS 11.41.420(a)(4) covers sexual contact with patients who are aware of the touching but who are unaware that the touching exceeds the legitimate bounds of treatment.

### Facts and procedural history of this case

Andy N. Ritter was a massage therapist in Barrow. The State charged him with six counts of unlawfully engaging in sexual contact with several of his female clients by touching their breasts and genitals, and by

pressing his penis against their bodies. When the State presented Ritter's case to the grand jury, the State argued that Ritter's conduct constituted second-degree sexual assault under two different theories.

First, the State contended that the circumstances of the massage (the fact that the women were naked, and that they were alone with Ritter in the building) constituted "implicit" coercion, and thus any sexual contact was "without consent" as that term is defined in AS 11.41.470(8)(A).[1]

Alternatively, the State contended that even though the women might have expected to be touched on their breasts and, conceivably, on their genitals during their massages, they did not expect the touching to be sexual in nature, and therefore Ritter was guilty of second-degree sexual assault under AS 11.41.420(a)(4). This portion of the statute declares that a "health care worker" (a term which includes massage therapists [2]) commits the crime of second-degree sexual assault if, during the course of the victim's professional treatment, the health care worker "engages in sexual contact with a person who the offender knows is unaware that a sexual act is being committed".

After Ritter was indicted, he filed a motion to dismiss the charges, arguing that both of the State's theories of prosecution were invalid. With regard to the State's "without consent" theory, Ritter noted that although the women testified that the touching made them uncomfortable, none of them testified that they did not consent to the touching or that, if they had any reservations about it, they did anything to manifest their lack of consent. He further argued that the State's theory of "implicit coercion" was not supported by the record. With regard to the State's "lack of awareness" theory, Ritter noted that the women were at all times awake and in control of their faculties, and that they all knew that they were being touched on their breasts and/or genitals. Under such circumstances, Ritter argued, there was no evidentiary basis for the State's allegation that the women were "unaware" that sexual contact was occurring.

The superior court denied Ritter's motion to dismiss the indictment, and the parties prepared to go to trial. However, on the day that Ritter's trial was to commence, Ritter and the State announced that they had reached a plea agreement. Under this agreement, Ritter would plead no contest to one of the six counts of second-degree sexual assault (a count of his choice). In exchange for this plea, the State would dismiss the remaining five counts and would promise not to pursue any other charges arising from the same incidents. The State would also agree that Ritter could appeal his conviction, renewing his argument that the superior court should have dismissed the indictment.

This last provision of the plea bargain (the agreement that Ritter could appeal his conviction and renew his attack on the indictment) meant that Ritter's proposed plea was a *Cooksey* plea—a plea governed by the supreme court's decisions in *Cooksey v. State*[3] and *Oveson v. Anchorage*[4]. In order for Ritter's plea agreement to be valid under *Cooksey* and *Oveson*, the issue preserved for appeal had to be dispositive of the litigation. As this court clarified in *Miles v. State*[5], an issue is "dispositive" for *Cooksey* purposes only if "resolution of the issue in the defendant's favor would either legally preclude the government from pursuing the prosecution or would leave the government without sufficient evidence to survive a motion for judgement of acquittal at the conclusion of the government's case." [6]

The obvious problem with Ritter's *Cooksey* plea is that motions to dismiss a grand jury indictment are generally not dispositive under *Miles*. Even if the court agrees with the

---

1. Under this statute, an act of sexual penetration or sexual contact is "without consent" if the victim "is coerced by the use of force ... or by the express or implied threat of death, imminent physical injury, or kidnapping to be inflicted on anyone".

2. *See* AS 11.41.470(1).

3. 524 P.2d 1251, 1255–57 (Alaska 1974).

4. 574 P.2d 801, 803 n. 4 (Alaska 1978).

5. 825 P.2d 904 (Alaska App.1992).

6. *Id.* at 906–07.

defendant and dismisses the indictment for lack of sufficient evidence, for erroneous legal instructions to the grand jury, or for any other procedural flaw, the State is almost always free to present the case to the grand jury again. As we explained in *Ryan v. State*[7], an attack on an indictment is not dispositive unless a ruling in the defendant's favor would preclude reindictment.[8]

Superior Court Judge Michael I. Jeffery recognized this problem when the parties proposed the *Cooksey* plea. But when the judge questioned whether Ritter's motion to dismiss the indictment was "dispositive", both the defense attorney and the prosecutor assured him that the attack on the indictment would be dispositive if Ritter could show that *both* of the State's theories of prosecution were flawed—the "without consent" theory and the "unawareness" theory. Based on the attorneys' arguments, Judge Jeffery concluded that the issues preserved for appeal were, in combination, dispositive, and so he accepted Ritter's plea as a valid *Cooksey* plea.

A year and a half later, after Ritter was sentenced and while his appeal was pending, Ritter filed a motion to withdraw his plea. He noted (correctly) that even if both of the State's theories of prosecution were dismissed for lack of evidence and/or for faulty instructions to the grand jury, the State would still be able to return to the grand jury with better evidence and/or more accurate instructions on the law. Thus, Ritter concluded, the *Miles* test was not satisfied, his appeal would ultimately be dismissed, and it would be easier for everyone if he were allowed to withdraw his plea now rather than waiting for this court to dismiss the appeal and order that same remedy.

The State defended Ritter's plea. Although it acknowledged that grand jury errors are generally not dispositive, the State now asserted for the first time that they had no better case than the one they presented to the grand jury:

What is ... missing from the *Cooksey* discussion [when Ritter's plea agreement was presented to the superior court] is a specific. acknowledgement that the grand jury testimony ... includes all the evidence available on the issues of coercion and [unawareness]. Although it was probably assumed by the participants in the hearing, the State will [now] stipulate that it has no additional evidence on these issues ..., and therefore could present no more [evidence] at trial[.] Thus, if the appellate court ... held that the evidence presented at the grand jury was insufficient to constitute a crime under AS 11.41.420(a)(1) or (a)(4)(A), the State could no longer prosecute [the] defendant[.]

In light of its concession that it had no better case to present against Ritter, the State argued that Ritter's appeal really presented only two issues of law, and that a ruling in Ritter's favor on these two issues would preclude the State from prosecuting him.

Based on the State's concession that there was no other evidence against Ritter, Judge Jeffery analogized Ritter's attack on the indictment to a ruling on a defense motion for judgement of acquittal at the close of the State's case. The judge therefore agreed with the State that the attack on the indictment was dispositive, and he refused to allow Ritter to withdraw his plea.

### Was Ritter's plea a valid Cooksey plea?

 In his brief to this court, Ritter renews his argument that his attack on the grand jury indictment is not dispositive, that his plea is invalid under *Cooksey* and *Miles*, and that we should remand this case to the superior court with directions to allow Ritter to withdraw his plea and go to trial on the original six counts of the indictment. The State opposes this. Asserting that the grand jury record contains its entire case against Ritter, the State urges us to rule that the plea agreement is valid under *Miles*.

---

7. 899 P.2d 1371, 1383 (Alaska App.1995).

8. *Compare Shetters v. State*, 751 P.2d 31, 36 (Alaska App.1988); *Wilson v. State*, 711 P.2d 547, 550 n. 2 (Alaska App.1985) (when a defendant claims to have received ineffective assistance of counsel because their attorney failed to attack the grand jury indictment, the defendant must show not only that the attack would have succeeded but also that the State could not have obtained another indictment).

In *Brown v. State*[9], this court accepted a *Cooksey* plea under circumstances that are facially similar to Ritter's case. Brown was charged with refusal to submit to a breath test. He wished to litigate the contention that a person could not be found guilty of this offense unless the State also proved beyond a reasonable doubt that the person had contemporaneously been driving while intoxicated.

From the facts of the case, it was not clear that Brown should be acquitted even if he prevailed on this claim. The police discovered Brown and his vehicle in a ditch. Brown was intoxicated, but he claimed that he had become intoxicated while sitting in the ditch, waiting for rescue. If the jury accepted Brown's version of the event, then even though he refused to take the breath test, he would not be guilty of the separate crime of driving while intoxicated.[10] However, the State obviously had a reasoned basis for arguing that Brown was shading the truth in his own favor, and that Brown's intoxicated driving was the true reason that Brown's vehicle ended up in the ditch.

Given these facts, this court faced a *Cooksey* plea in a seemingly non-*Cooksey* situation. Even if Brown's legal contention was correct—*i.e.*, even if the law required the State to prove that Brown had been driving while intoxicated as a predicate to any charge of breath-test refusal, Brown's contention would not necessarily be dispositive of the case. Based on the evidence, a jury could reasonably find that Brown was, in fact, also guilty of driving while intoxicated, and thus the jury could lawfully convict Brown of breath-test refusal even if this court adopted Brown's interpretation of the law.

This court finessed the *Cooksey* problem by declaring that Brown and the State had, "in effect[,] submitted this case on stipulated facts, arguing only the legal significance of those facts."[11] That is, we accepted Brown's *Cooksey* plea (and decided his case) under the assumption that the State had agreed to forego any attempt to prove that Brown was

intoxicated when he drove into the ditch—thus converting Brown's legal argument into a dispositive issue.

Our decision in *Brown* might be read as an indication that we should accept the State's similar concession in Ritter's case—the State's concession that (1) it has no further evidence to offer against Ritter and, thus, (2) if Ritter's legal attacks on the State's two theories of prosecution are well-founded, Ritter should be acquitted. But there are three problems with applying the *Brown* decision to Ritter's case.

The first problem is that Ritter wants to withdraw his plea and go to trial. In *Brown*, we stretched the limits of *Cooksey* at the request of two willing parties, both of whom wanted to litigate a particular legal issue and were willing to have the defendant's guilt or innocence decided on that basis. But Ritter is no longer a willing participant in this appellate litigation. The State wants to resolve this case on stipulated facts, but Ritter does not wish to join the stipulation.

The second problem is that our later decision in *Miles v. State* appears to be at odds with the approach we took in *Brown*. In *Miles*, we rejected the State's attempt to make an issue "dispositive" by agreeing not to pursue the case if the defendant prevailed on the disputed issue. Instead, we established the rule that an issue would be deemed dispositive for *Cooksey* purposes only if a decision in the defendant's favor "would either legally preclude the government from pursuing the prosecution or . . . leave the government without sufficient evidence to survive a motion for judgement of acquittal".[12] Three paragraphs later in *Miles*, we discussed cases like Ritter's:

We recognize that criminal cases will, from time to time, give rise to important questions of law which, although not "dispositive", are nonetheless deserving of immediate appellate resolution. Our holding does not preclude, nor is it intended to discourage, either or both parties from petitioning this court for interlocutory re-

---

9. 739 P.2d 182 (Alaska App. 1987).

10. *See id.* at 183–84.

11. *Id.* at 183.

12. 825 P.2d at 906.

view under Alaska Appellate Rule 402 in such cases. *Alternatively, if the parties concur that the only crucial aspect of the case is a non-dispositive legal issue and that there are no material factual disputes to be litigated, the parties may agree to hold a trial on stipulated facts or upon the grand jury record, thus obtaining an appealable judgement.*

825 P.2d at 907 (emphasis added). The problem in Ritter's case is that the parties did not follow either of the procedures approved in *Miles*—procedures that lead to a trial verdict and, thus, an appealable judgement.

As explained above, the flaw in Ritter's *Cooksey* plea is that attacks on a grand jury indictment are usually not dispositive—because, generally speaking, the State's failure to present sufficient evidence at grand jury does not mean that the State will be unable to pursue the prosecution and later survive a motion for judgement of acquittal. If Ritter and the State had gone to trial on the grand jury record, this problem would not exist—for then the State's grand jury evidence would have been the State's trial evidence. But the parties did not see this problem until Ritter asked to withdraw his plea. Only then did the State express a willingness to stipulate that its grand jury evidence constituted its complete case against Ritter—and, by then, Ritter was unwilling to join in this stipulation.

*Miles* certainly suggests, even if it does not directly hold, that when the parties wish to make an issue dispositive by presenting the case on stipulated facts, the plea agreement will not meet the test for a valid *Cooksey* plea unless a verdict has been rendered on those stipulated facts. Although we are not prepared to say that we would never again accept the kind of *Cooksey* plea presented in *Brown*, we are prepared to say that we will not accept a *Cooksey* plea based on "stipulated" facts unless all parties join in the stipulation.

Finally, there is a third problem with applying the *Brown* decision to Ritter's case. That problem is the evidence contained in the grand jury record. We have examined the testimony presented by the State's witnesses, and it appears that even if we accepted the State's concession that the grand jury record contains the entire evidence against Ritter, the issues presented in this appeal are not dispositive. That is, the State could still prosecute one or more of its sexual assault counts even if Ritter prevails on the legal arguments presented in this appeal.

We note, in particular, the testimony that Ritter took one victim's hand and held it against his penis for up to twenty seconds. This testimony could conceivably support a conviction for second-degree sexual assault even if this court rejected the State's two arguments in this appeal (the State's theory of "implicit" coercion and its interpretation of the word "unaware").

For these reasons, we conclude that Ritter's *Cooksey* plea is invalid. He must be allowed the opportunity to withdraw that plea and go to trial on the indictment (with all six counts reinstated).

*Treating this appeal as a petition for review filed by the State, we decline to review the State's theory that the circumstances of the massages constituted implicit "coercion"*

■ Anticipating that we might conclude that Ritter's *Cooksey* plea was invalid, the State asks us to accept this case as a petition for review and resolve the issues that have been briefed.

For two reasons, we decline the State's invitation to review its theory that Ritter could be charged with sexual assault under AS 11.41.420(a)(1) because the circumstances of the massage constituted "implicit" coercion. First, whatever meaning we might attach to the phrase "implicit coercion", the line between "implicit" and "explicit" coercion will almost inevitably rest entirely on the facts of each case. This line may often be fuzzy and more appropriate for a jury determination than an appellate court ruling. Second, the legislative history of AS 11.41.420(a)(4)—the health care worker provision of the sexual assault statute-suggests that the State's theory of "implicit" coercion may be flawed.

The State argues that the circumstances of a massage—the victim disrobed, alone with the masseur, isolated from other people who

might intervene—constitute an implicit coercion that makes any ensuing sexual contact "without consent". But if the State is correct that sexual assaults by massage therapists will generally be prosecutable under section (a)(1) of the statute because massage patients generally find themselves in a vulnerable position, then it is seemingly difficult to explain the legislature's decision to enact a separate provision, section, (a)(4), that expressly covers sexual assaults by health care workers (including massage therapists).

In testimony before the House Judiciary Committee, one of the drafters of section (a)(4) declared that the definition of "health care worker" was crafted for the very purpose of

> identify[ing] professions in the healing arts where people had to take their clothes off or make their bodies vulnerable as part of treatment.... [T]he basic criteri[on] for defining "health care workers" [was identifying] professions where the patient's body was put in a vulnerable position.

Testimony of Laurie Otto, Counsel to the House Judiciary Committee, House Judiciary Committee Minutes, January 15, 1992.

This testimony strongly suggests that the legislature enacted section (a)(4) so that sexual contact committed by certain health care providers upon vulnerable patients could be prosecuted even when the State could not prove that the sexual contact was "without consent". The legislature's enactment of section (a)(4) also suggests that the legislature believed that a substantial amount of unauthorized sexual contact perpetrated by massage therapists would go unprosecuted or unpunished if the State was confined to a "without consent" theory of prosecution under section (a)(1)—a belief seemingly at odds with the State's argument that the circumstances of a massage will generally constitute coercion.

It may be that, in a specific case, the particular circumstances in which the massage was administered and the particular words or actions of the massage therapist would constitute a coercion sufficient to prove that any ensuing sexual contact ·was "without [the victim's] consent" and thus prosecutable under section (a)(1) of the second-degree sexual assault statute. But we have significant doubts about the State's assertion that this will generally be true. These doubts, combined with the case-specific nature of any such inquiry, lead us to conclude that we should deny this portion of the State's petition for review.

*We accept the State's petition concerning the second issue raised: the proper interpretation of the word "unaware" in AS 11.41.420(a)(4)*

▮▮▮ We reach a different conclusion with respect to the State's argument that Ritter could be indicted under section (a)(4) of the statute, on the theory that his patients were "unaware that a sexual act [was] being committed". Here, the issue is purely a legal one. Ritter asserts that this phrase must be confined to health care patients who are unconscious or whose faculties are otherwise so dulled that they have no conscious perception that they are being touched on the genitals, anus, or female breast. The State asserts that section (a)(4) also applies to patients who are aware that they are being touched but who are unaware that this touching is for a sexual purpose rather than a health care purpose.

This question of statutory interpretation can be answered without reference to the still-unlitigated details of Ritter's case. The parties have fully briefed the matter. Moreover, our decision will resolve "an important question of law on which there is substantial ground for difference of opinion", and our resolution of this question "may materially advance the ultimate termination of [this] litigation".[13] For these reasons, we grant the State's petition for review of this legal issue, and we now take up the meaning of the phrase "unaware that a sexual act is being committed".

The meaning of this phrase rests on the meaning of the words "sexual act". For purposes of the sexual assault statutes, "sexual act" is defined by AS 11.41.470(6). It means "sexual penetration or sexual contact".

13. Alaska Appellate Rule 402(b)(2).

Thus, the phrase "unaware that a sexual act is being committed" is equivalent to "unaware that sexual penetration or sexual contact is being committed". Ritter is only charged with sexual contact. Therefore, in his case, the statutory phrase is equivalent to "unaware that sexual contact is being committed".

Because the key question in Ritter's case is whether his patients were unaware that sexual contact was being committed, we turn to the definition of "sexual contact" found in AS 11.81.900(b)(57).

The definition of "sexual contact" has two parts: a basic definition and an exception. Subsection (b)(57)(A) contains the basic definition of "sexual contact": a defendant engages in sexual contact if they "knowingly touch[ ] ... the victim's genitals, anus, or female breast; or knowingly caus[e] the victim to touch ... the defendant's or victim's genitals, anus, or female breast".

Subsection (b)(57)(B) contains two exceptions to this basic definition. For purposes of Ritter's case, the pertinent exception is found in subsection (B)(ii). Under this subsection, a touching that would normally constitute "sexual contact" under subsection (A) will not be deemed "sexual contact" if the touching is "performed for the purpose of administering a recognized and lawful form of treatment that is reasonably adapted to promoting the physical or mental health of the person being treated". In other words, when a massage therapist knowingly touches a female patient's breasts, genitals, or anus, this touching is *not* "sexual contact" if it was performed for the purpose of administering legitimate massage therapy.

We now return to the main issue—the proper interpretation of the phrase "unaware that a sexual act is being committed" in AS 11.41.420(a)(4). Given the various statutory definitions we have just discussed, we conclude that a massage therapy patient can be "unaware that [sexual contact] is being committed" even though the patient is conscious of the fact that their masseur or masseuse is purposely touching them on the breasts or genitals. Such touching does not constitute "sexual contact" if it is done for the purpose of administering "a recognized and lawful form" of massage therapy. Thus, if Ritter's female patients were aware that he was purposely ("knowingly") touching them on the breasts or genitals, but if they mistakenly believed that this touching was a legitimate part of the massage when in fact it was not, then these patients would have been unaware that sexual contact was occurring. Under such circumstances, Ritter might properly be charged under section (a)(4) of the second-degree assault statute.

Our interpretation of AS 11.41.420(a)(4) means that it covers two distinct situations: (1) instances where a patient is unconscious or otherwise fails to perceive that they are being touched on the genitals, anus, or female breast; and (2) instances where a patient mistakenly believes that this touching is part of legitimate treatment.

■ Regarding this second category of cases, the State suggests that the touching is illegal because the health care worker is motivated by a sexual purpose rather than a legitimate therapeutic purpose. This is not accurate. The definition of "sexual contact" does not include an element of specific intent. In particular, "sexual contact" does not require proof that the offender acted for the purpose of sexual gratification or arousal.[14]

Rather, AS 11.81.900(b)(57)(B)(ii) declares that a defendant's conduct is *removed* from the definition of "sexual contact" if the defendant's conduct was motivated by a particular *exculpatory* purpose: "the purpose of administering a recognized and lawful form of treatment that is reasonably adapted to promoting the physical or mental health of the person being treated". Thus, in a case like Ritter's, the State is not obliged to prove what Ritter's intent *was*, but will likely have to prove what it *was not*.

If Ritter raises the defense that the alleged touching was part of legitimate massage therapy, the State must prove beyond a reasonable doubt that Ritter did not have the

---

14. *See Beltz v. State,* 980 P.2d 474, 477 (Alaska App.1999); *Peratrovich v. State,* 903 P.2d 1071, 1076–78 (Alaska App.1995).

intent to administer recognized and lawful treatment. We note that, under the statutory definition of "intentionally" contained in AS 11.81.900(a)(1), a person can act with more than one intent. The statute provides that a person can be found guilty of acting with a specific prohibited intent even when the person was motivated by other intents as well.[15] Applying this rule to Ritter's case, Ritter would not be guilty of engaging in "sexual contact" if he acted for the exculpatory purpose specified in AS 11.81.900(b)(57)(B)(ii), regardless of any other purpose that he might have had.

Of course, if the State has evidence that Ritter derived sexual enjoyment from touching the three women named in the indictment, this evidence would be relevant to identifying Ritter's motivation(s) for the touching. But this evidence would not be conclusive of Ritter's guilt—for if there is a reasonable possibility that Ritter acted for "the purpose of administering a recognized and lawful form of treatment", then he would not be guilty of engaging in "sexual contact" even if he also acted for the purpose of deriving sexual arousal or gratification.

 Finally, we note that AS 11.41.420(a)(4) also requires proof that the health care worker *knows* that the patient is unaware that sexual contact is occurring. Thus, when the State's case is based on the allegation that a conscious patient was subjected to touching that exceeded the bounds of legitimate treatment, the State must also prove that the health care worker "knew" (was aware of at least a substantial probability) that the patient was unaware that the touching exceeded the bounds of legitimate treatment.[16]

Turning to the facts of Ritter's case, if the evidence presented to the grand jury is viewed in the light most favorable to the State, that evidence is sufficient to prove all the elements of second-degree sexual assault under AS 11.41.420(a)(4) as we have inter-preted them here. We therefore affirm the superior court's decision to uphold the indictment insofar as it alleges violations of AS 11.41.420(a)(4).

(As explained above, we deny the State's petition for review concerning the other aspect of the superior court's decision—the superior court's ruling that the grand jury evidence was sufficient to support indictment under AS 11.41.420(a)(1), the State's "without consent" theory of prosecution.)

*Conclusion*

Because Ritter's plea is not a valid *Cooksey* plea, he must be allowed to withdraw his plea and go to trial on the indictment. The superior court's denial of Ritter's motion to withdraw his plea is REVERSED.

We hold that the evidence presented to the grand jury is sufficient to support Ritter's indictment on the six counts of second-degree sexual assault under AS 11.41.420(a)(4)—*i.e.*, under the theory that Ritter engaged in sexual contact with patients who he knew were unaware that sexual contact was occurring. The superior court's decision upholding the indictment on this theory is AFFIRMED.

We express no opinion as to whether one or more counts of the indictment validly charge second-degree sexual assault under AS 11.41.420(a)(1)—*i.e.*, the theory that the sexual contact was "without [the women's] consent" as that phrase is defined in AS 11.41.470(8)(A).

This case is remanded to the superior court for further proceedings consistent with our decision.

---

**15.** AS 11.81.900(a)(1) states that "when intentionally causing a particular result is an element of an offense, that intent need not be the person's only objective".

**16.** See the definition of "knowingly" contained in AS 11.81.900(a)(2).