Joseph L. OSWALD, Jr., Appellant,

v.

STATE of Alaska, Appellee.

STATE of Alaska, Petitioner,

v.

Joseph L. OSWALD, Jr., Respondent.

Nos. A–387, A–427.

Court of Appeals of Alaska.

March 14, 1986.

Thomas H. Dahl, Esq., Anchorage, for appellant and respondent Joseph L. Oswald, Jr.

Cynthia M. Hora, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee and petitioner State.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Joseph L. Oswald, Jr. was convicted after jury trial of three counts of sexual assault in the first degree. Former AS 11.41.410(a)(3). Oswald was subject to an

eight-year presumptive term for each count. AS 12.55.125(i)(1). Judge Eben Lewis sentenced Oswald to two concurrent terms of eight years and a consecutive term of eight years with six years suspended. Oswald's composite sentence is therefore sixteen years with six years suspended. Oswald appeals his conviction, and we granted the state's petition for review challenging the legality of the sentence imposed by Judge Lewis. We affirm. We will discuss the facts as they pertain to each issue.

■ Oswald first argues that the court committed reversible error when it allowed evidence of the virginity of the complaining witness, R.A., to be presented to the jury. He points out that consent was not an issue. In reply, the state argues that Oswald did not object when R.A. was asked on direct examination if she was a virgin prior to the alleged incidents with Oswald. Nor did Oswald object when D.L.Y., a friend of R.A. who accompanied her to the place of the alleged sexual activity, testified that R.A. told her shortly thereafter that she had "lost her virginity." The record bears out the state's argument.

■ Properly construed, Oswald's objection was not to the testimony regarding virginity but to the fact that the trial court precluded Oswald from cross-examining R.A. regarding a prior incident in which she had allegedly been digitally penetrated by a school friend. We generally agree with those authorities that hold that where the state offers medical evidence that the prosecutrix has a ruptured hymen, probably due to sexual intercourse, it is permissible for the defendant to show that she had had sexual relations with others, thereby accounting for the condition of her hymen. *See, e.g., State v. Nab,* 245 Or. 454, 421 P.2d 388, 389–90 (1966); *cf. State v. Cosden,* 18 Wash.App. 213, 568 P.2d 802, 806–07 (1977) (evidence that adult rape victim has had recent intercourse with another person may be relevant to a disputed issue), *cert. denied,* 439 U.S. 823, 99 S.Ct. 90, 58 L.Ed.2d 115 (1978). Here, Dr. Carolyn Brown testified that she administered a rape exam to R.A. at 9:30 p.m. on September 26, 1983. Dr. Brown testified that R.A.'s condition was essentially normal, that she examined the vaginal area and discovered that the hymen was not intact. She continued:

At the level of the vulva and the forshett (ph), which are the organs which we use to describe those tissues immediately surrounding the birth canal area, I noted there were several drops of what I considered old blood. There were—there was no active tearing. There was no active bleeding, hemotomas, or blood blisters. That [sic] was no edema. No apparent evidence of severe immediate injury.

Dr. Brown indicated that she took a pubic hair combing and samples of R.A.'s vaginal discharge in order to test for the presence of semen. The pubic hair combings were later examined by technicians with the Federal Bureau of Investigation who discovered no hairs that could be associated with Oswald in the cuttings. The technicians found no evidence of semen in the slides containing vaginal discharge from R.A.

■ Under these circumstances, Oswald argues that he should have been permitted to cross-examine R.A. regarding the prior incident. The trial court viewed the matter as one of discretion under AS 12.-45.045 (the Rape Shield statute) and Alaska Rules of Evidence 403 and 404. After hearing from the parties out of the presence of the jury, the trial judge ruled against cross-examination. The trial court relied on R.A.'s testimony on *voir dire* that she had experienced little pain or discomfort and had not bled during the earlier incident with her school friend. The implication drawn from that testimony was that digital penetration sufficient to perforate the hymen would have caused pain and some bleeding. In addition, Dr. Brown found recent evidence of blood, *i.e.,* the "old" blood about which she testified, which she concluded could not have been due to an incident eight or nine months earlier. Weighing these factors together, Judge Lewis concluded that the probative

value of the earlier incident as an alternate explanation for the perforation of R.A.'s hymen was very weak, and the prejudice of invading her privacy unnecessarily and confusing the issues very high. We note that Oswald wished to cross-examine R.A. to attack her general credibility, *i.e.*, her truthfulness regarding her virginity, rather than to offer an alternate explanation for her physical condition as related by Dr. Brown. The trial court found that the prior incident had little probative value for impeachment because a prior digital penetration was not clearly inconsistent with virginity, at least as R.A. apparently understood that term. We also note that the prosecutor did not rely on the condition of R.A.'s hymen in arguing to the jury that intercourse occurred between R.A. and Oswald. We conclude that the trial court did not abuse its discretion in precluding cross-examination in this case.

■ Oswald next argues that the trial court committed reversible error by not declaring a mistrial when it learned of possible jury bias. Oswald was a security guard at the Alyeska Pipeline Service Company office building and allegedly recognized two potential jurors, who ultimately sat on the case, as people he might have had contact with at that time. All jurors denied recognizing Oswald. He brought this matter to the attention of his counsel, but no specific inquiry into possible bias was made. Oswald asserts that this constitutes ineffective assistance of counsel as a matter of law and undermines confidence in the integrity of the fact-finding process. We reject this contention.[1]

■ Oswald next argues that the court committed reversible error when it allowed evidence of the defendant's alleged "sexual propositions" to several other young girls to be presented to the jury. After an extensive hearing the trial court permitted certain friends of R.A. to testify that Oswald expressed an interest in having sexual intercourse with them in the week or so

preceding the alleged incident with R.A. The trial court found the evidence relevant in establishing a motive to have sexual intercourse with underage girls and also to show a design, plan or scheme on Oswald's part to seduce young girls. *See* Alaska Rule of Evidence 404(b). We agree with Oswald that this evidence was not relevant to show motive. In context, motive generally means an emotional attachment to the alleged victim of the offense. Where the state seeks to show an alleged emotional interest in young girls generally, the evidence ceases to show motive and simply shows criminal propensity. *See generally*, 2 J. Wigmore, *Evidence* § 399 (Chadbourn rev. ed. 1979). Defendant's former sexual activities with third persons cannot establish motive since it is indistinguishable from a generally lustful character. *Id.*, § 402 at 463.

■ We believe however, that the state made a sufficient showing of design, scheme or plan so that the trial court did not abuse its discretion in permitting the evidence to come in. *See* J. Wigmore, *Evidence* § 357(3) at 334–35 (Chadbourn rev. ed. 1979). We construe the evidence in the light most favorable to the state. On September 25, 1984, Oswald, age twenty-six, Jimmy Becker, age eighteen, and D.Y., Becker's thirteen-year-old girlfriend, picked up R.A. in Wasilla and drove to Anchorage. D.Y. arranged the meeting with R.A. The group proceeded to a trailer in a trailer court managed by Oswald, where they spent the night. R.A. testified that Oswald specifically asked her about her virginity while engaging in sexual relations with her. D.Y., a thirteen-year-old eighth grader, testified that Oswald had expressed an interest in meeting her friends and sought her assistance in meeting girls. Finally, the witnesses whose testimony forms the basis for Oswald's objection were D.Y. and two friends of D.Y. and R.A. The two additional witnesses were of approximately the same age as R.A., who Oswald met

---

1. Our disposition of this issue would not preclude Oswald from pursuing the issue of ineffective assistance of counsel as a matter of fact in an Alaska Rule of Criminal Procedure 35(c) proceeding. *Barry v. State*, 675 P.2d 1292, 1295–96 (Alaska App.1984).

through D.Y. Under the circumstances, the trial court could find that Oswald had a pre-existing plan to use his friendship with James Becker, and Becker's young friend D.Y., as a means of obtaining access to D.Y.'s young female friends for sexual purposes, and that his actions with R.A. were, in part, a consummation of that plan. This evidence was probative in explaining why Oswald invited R.A. to his trailer, and in rebutting the defense theory of the case: that Oswald was merely acting as a runaway counselor providing sanctuary to teenagers abused by their parents and stepparents. Under the circumstances, the trial court did not abuse its discretion in admitting the evidence. *See State v. Bennett*, 36 Wash.App. 176, 672 P.2d 772 (1983).[2]

In its cross-appeal the state argues that Judge Lewis imposed an illegal sentence. Oswald was convicted of three counts of sexual assault in the first degree. Count I involved digital penetration, while Counts II and III involved genital penetration. Judge Lewis sentenced Oswald to concurrent eight-year terms on Count I and II. With respect to Count III, Judge Lewis sentenced Oswald to eight years with six years suspended. He ordered that sentence to run consecutively to the eight-year sentence imposed on Counts I and II, for an aggregate sentence of sixteen years with six years suspended.

■ The state concedes that Count I encompassed foreplay leading to the act of sexual intercourse charged in Count II, and consequently could not support a separate conviction. *See Tookak v. State*, 648 P.2d 1018 (Alaska App.1982). The state asks that the conviction for Count I be vacated, and Oswald joins in this request. We have carefully considered the record and conclude that the parties' position is correct, and that the first act of digital penetration in effect merged with the first act of genital penetration. Only one conviction and sentence was therefore appropriate. On remand, the trial court should correct the judgment to reflect only one conviction on Counts I and II.

2. *State v. Bennett* has been criticized as ignoring the distinction between use of evidence to show a plan and use of evidence to show *modus operandi*:

A recent Washington case illustrates the problem many courts have in distinguishing between "plan" and "modus operandi" as grounds for admission of other crimes. [*Citing State v. Bennett.*] The defendant was charged with two counts of statutory rape and two uncharged crimes were admitted. In all of these, the defendant had enticed teenage runaways into exchanging sex for food and shelter. This common modus operandi was said to be admissible under Rule 404(b) to prove that defendant had engaged in intercourse as part of a plan to take advantage of runaways in this fashion.

This is evidence of propensity, not plan. But the opinion suggests that what misled the court was to read "plan" to mean something like a blueprint. Proof that the witch had constructed one gingerbread house will support an inference that she has the "plans" for this type of architectural endeavor but it does not prove whether or not she will ever use the blueprint to construct another lure for lost children. It is only when we can infer a plan for a subdivision to be called "Gingerbread Acres" that we can infer from the plan that the witch also constructed a second house.

To say that the defendant had a "plan" to seduce every runaway he could may not do violence to the language but it does undermine the policy of Rule 404(b) by permitting the use of propensity to prove conduct. To be properly admissible under Rule 404(b) it is not enough to show that each crime was "planned" in the same way; rather, there must be some overall scheme of which each of the crimes is but a part.

22 C. Wright & K. Graham, *Federal Practice and Procedure: Evidence* § 5244 at 359 (Supp.1985) (footnotes omitted).

In our view, Oswald's use of D.Y. as a means of meeting each of the witnesses, as well as R.A., meets the authors' test. As they point out in a footnote:

Of course, if we find a second gingerbread house and the issue is the identity of the builder, a distinctive floor plan might show that the same witch built both. Or if the issue was why the second one was built, we might call Hansel and Gretel to testify about their experiences with the first.

*Id.* One of the questions in this case was why R.A. was invited to Oswald's trailer. The other girls who were introduced to Oswald by D.Y. were permitted to testify to their experiences with Oswald in order to answer this question. Oswald's overall scheme was to use D.Y. as a means to the seduction of her friends. R.A.'s experience was but a part of this overall scheme.

The state argues that, in contrast, Counts II and III were severable. It reasons that Oswald engaged in an act of sexual intercourse with R.A., during which she experienced pain and discomfort. This act was charged as Count II. In order to alleviate the pain and discomfort, Oswald left R.A. and went to the store and purchased Vaseline and returned and engaged in the second act of sexual intercourse. This act was charged as Count III. Under these circumstances, the state argues, there was a sufficient break in time and circumstance to warrant separate convictions. Oswald argues that, nevertheless, the incidents were part of one continuing transaction and should have resulted in but one conviction. We are satisfied that the state's position is well-founded. *See Tuckfield v. State,* 621 P.2d 1350, 1352–53 & n. 3 (Alaska 1981). We therefore conclude that the trial court properly entered separate convictions and sentences for Counts II and III.

The state next argues that AS 12.55.-025(e) and (g) require consecutive sentences on Counts II and III, and prohibit Judge Lewis from suspending any portion of the mandatory consecutive presumptive term on Count III. We rejected these arguments in our recent decision in *State v. Andrews,* 707 P.2d 900 (Alaska App.1985) *petition for hearing granted,* (Alaska, December 6, 1985). We adhere to the reasoning in *Andrews.*

The judgment and sentences of the superior court are AFFIRMED in part and the case is REMANDED to vacate Oswald's conviction on Count I.