**Romeo IYAPANA, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–10693.**

Court of Appeals of Alaska.

Sept. 14, 2012.

---

**24.** *Id.*

Hanley Rebecca Smith, Assistant Public Defender, Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

844

Tamara de Lucia, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and John J. Burns, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## *OPINION*

BOLGER, Judge.

Romeo Iyapana beat and sexually assaulted T.S., his mother's long-term boyfriend. Iyapana was convicted of first-degree sexual assault for forcible oral penetration, attempted first-degree sexual assault for attempted anal penetration, and second- and fourth-degree assault. On appeal, Iyapana argues that the prosecutor failed to present exculpatory evidence to the grand jury on the attempted anal penetration count. We decline to address this argument because it was not presented to the superior court. Iyapana also claims that the trial judge erred when he gave a jury instruction that contained several examples of what constitutes a "substantial step" as that term is used in the attempt statute. We conclude that this instruction was legally correct and not misleading.

Iyapana also argues that there was insufficient evidence to support his sexual assault convictions, but we conclude that both convictions are adequately supported by T.S.'s testimony and substantial circumstantial evidence. Iyapana also argues that the sentencing judge should have merged his sexual assault convictions to comply with the double jeopardy clause. But we conclude that the judge's decision was justified by our prior decisions allowing separate convictions for different types of sexual penetration, even when they occur during a single incident.

### *Background*

Iyapana lived with his sister, Charlene, and her boyfriend, Robert. Iyapana's mother, Helen Iyapana, and her long-term partner, T.S., lived at the Brother Francis Shelter and homeless camps in Anchorage.

One day, Charlene, Robert, Helen, and T.S. began drinking alcohol at Charlene's apartment. Iyapana eventually joined the group and began "helping himself to a few drinks." Charlene and Helen attempted to stop Iyapana from drinking, but Iyapana was determined to "get[ ] what he want[ed]."

T.S. attempted to break up an argument between Iyapana and Charlene, and Iyapana became angry at T.S. Iyapana pushed T.S. to the ground and dragged him across the floor. Charlene, Helen, and Robert ran out of the apartment because they were frightened by Iyapana.

Iyapana punched T.S. and choked him, causing T.S. to slip in and out of consciousness. At one point, T.S. realized that he could not breathe because Iyapana's penis was in his mouth. T.S. later woke to find that Iyapana was "doing it to [his] ... butt" and "making love to [him]." At trial, T.S. clarified that he felt Iyapana's "penis in [his] behind," but was not sure if Iyapana actually penetrated his anus.

Charlene returned to the apartment and found Iyapana drunk and naked. There was blood on the floor and walls and the apartment was in disarray. Charlene found T.S. in a bedroom, beaten up and bloody. Charlene then called the police.

When the police arrived, they found that T.S. had blood covering his face and his clothes. T.S. was wearing two pairs of pants and the outer layer was pulled down over his buttocks. Iyapana was initially cooperative and said that he did not know what happened to T.S. As time went on, however, Iyapana became increasingly combative and tried to intimidate the police.

Iyapana was tried at a jury trial conducted by Superior Court Judge Patrick J. McKay. The jury convicted Iyapana of one count of first-degree sexual assault (for the oral penetration),[1] one count of attempted first-degree sexual assault (for the attempted anal penetration),[2] one count of second-degree assault,[3] and one count of fourth-degree as-

---

1. AS 11.41.410(a)(1).

2. *Id.*; AS 11.31.100.

3. AS 11.41.210(a)(1).

sault.[4] Superior Court Judge Jack Smith sentenced Iyapana to a composite sentence of thirty-two years and six months in prison. Iyapana now appeals.

### Discussion

*Iyapana waived his grand jury challenge because he did not file a pretrial motion to dismiss the indictment.*

During the grand jury hearing, T.S. testified that he slipped in and out of consciousness during Iyapana's attack. T.S. regained consciousness at one point and realized his pants were pulled down and that Iyapana was trying to penetrate him from behind. T.S. stated that he did not know if Iyapana succeeded in penetrating his anus. T.S. explained that, when he regained consciousness at a later point, he realized that Iyapana's penis was in his mouth.

The prosecutor later asked whether T.S. remembered telling the police that the anal assault did not occur: "Do you remember ever having some police ask you about these things about the sexual assault, the penis in your mouth and the anus, and you [said] that, no, that it didn't happen? Do you remember ever saying anything like that?" T.S. replied that he could not remember whether he made that statement. The following exchange then occurred between the prosecutor and T.S.:

> *Prosecutor:* Do you remember why—let me just ask you if you can—let's say that you did say to somebody that it didn't happen. Do you know why you would have told somebody that it didn't happen?
>
> *T.S.:* Probably because I was so beaten up and wasn't thinking.
>
> *Prosecutor:* Is this something that you talk to a lot of people about . . . ? Or is this hard for you to talk about?
>
> *T.S.:* You know, to be honest, I try to heal by myself. . . . I think it might be part of our culture, to not . . . seek help. I know this might sound—sound wrong, but in our

culture, we tend to try to—try to heal ourselves. And I think that's . . . where I went wrong. I did not really try to seek help. . . . [P]eople gave me information [on] where I can go to seek counseling and help. But I . . . did not utilize it.

Detective Bianca Cross did not testify at the grand jury proceeding. At trial, however, Cross testified about statements that T.S. made when she interviewed him at the hospital the day following the assault. She testified that T.S. was able to describe Iyapana's oral sexual assault. But when Cross asked T.S. whether Iyapana committed any other type of sexual assault, T.S. "started crying and putting his hand up, kind of, you know, looking away from me and going like—you know, kind of pushing away with his hand," and he said "nowhere else." Cross believed T.S. did not want to talk about the anal penetration, so she did not press him for further details.

Iyapana argues on appeal that the prosecutor committed prejudicial misconduct when he failed to inform the grand jury that T.S. denied the attempted anal penetration when speaking to Detective Cross. If Iyapana had asserted this argument in a pretrial motion, then we would have to determine whether the prosecutor had violated his responsibilities to the grand jury. Alaska Rule of Criminal Procedure 6(q) requires that prosecutors present exculpatory evidence during grand jury proceedings.[5] But this duty "extends only to evidence that tends, in and of itself, to negate the defendant's guilt."[6] "The mere fact of inconsistency [between the grand jury presentation and other evidence] does not automatically convert all such evidence into exculpatory material."[7]

To properly raise this issue, however, Criminal Rule 12(b)(2) requires that a defendant file a motion to dismiss the indictment prior to trial. Criminal Rule 12(e) states that "[f]ailure by the defendant to raise defenses or objections or to make requests which must be made prior to trial . . . shall

---

4. AS 11.41.230(a)(1).

5. *Frink v. State,* 597 P.2d 154, 164–65 (Alaska 1979).

6. *Cathey v. State,* 60 P.3d 192, 195 (Alaska App. 2002).

7. *Preston v. State,* 615 P.2d 594, 602 (Alaska 1980).

constitute waiver thereof." It thus appears that Iyapana waived his claim of error by his failure to assert it in a pretrial motion to dismiss the indictment.

We examined a similar situation many years ago in *Gaona v. State.*[8] In *Gaona,* the defendant claimed that the prosecutor failed to provide exculpatory evidence to the grand jury and actively discouraged the grand jury from considering a potential self-defense argument.[9] We held that these claims regarding the indictment and grand jury process were forfeited because they were not raised before trial.[10]

We explained that, if a valid attack on the indictment is filed in a timely manner under Criminal Rule 12, then the State will generally be able to cure the defect and reindict the defendant.[11] But if we allow a defendant to challenge an indictment for the first time on appeal, "the prosecution would frequently be unfairly prejudiced" because "there would be a strong temptation for counsel to withhold these motions until appeal."[12] We ultimately held that an appellant who requests that we recognize a grand jury challenge as plain error "bears a heavy burden to convince us that we should depart from the normal rule that pretrial motions should be filed before trial and passed upon by the trial court."[13]

The Alaska Supreme Court approved the rationale of *Gaona* in *State v. Semancik.*[14] In *Semancik,* the defendant argued that the wording of his burglary indictment was defective because it failed to name the ulterior crime the defendant intended to commit following his illegal entry.[15] But the defendant did not make a motion to dismiss the indict-

ment in the trial court; he raised the issue for the first time on appeal.[16] The Supreme Court relied on *Gaona* and refused to consider the issue, stating, "It is simply against public policy to waste judicial resources by permitting defendants to knowingly refrain from challenging an indictment until after conviction."[17]

We do not repudiate appellate review of grand jury error when the issue has been preserved in the lower court. In those circumstances, appellate review remains an important safeguard to remedy or police unprofessional behavior by the prosecutor, and to protect the grand jury's role as an independent institution.[18] But when a defendant has not made any pretrial motion to dismiss the indictment, it is unlikely that the defendant can show the kind of manifest injustice that could constitute plain error warranting appellate review. A defendant generally can not show injustice, under these circumstances, because the trial verdict establishes that the defendant is guilty, despite any irregularities in the grand jury proceeding. Accordingly, when a defendant raises a grand jury challenge for the first time on appeal, we generally will not review the claim for plain error.

There may be exceptions to this general rule. Policy considerations may require us to review a grand jury violation that is singularly egregious.[19] And a defendant may be able to establish manifest injustice in a case where the grand jury violation is of such a nature that the state would be unable to secure a new indictment in a renewed grand jury proceeding.[20] But, in the absence

**8.** 630 P.2d 534 (Alaska App.1981).

**9.** *Id.* at 537.

**10.** *Id.*

**11.** *Id.*

**12.** *Id.*

**13.** *Id.*

**14.** 99 P.3d 538 (Alaska 2004).

**15.** *Id.* at 539–40.

**16.** *Id.*

**17.** *Id.* at 543.

**18.** *See generally Cameron v. State,* 171 P.3d 1154, 1157–59 (Alaska 2007) (discussing the grand jury's protective role).

**19.** *See Moreau v. State,* 588 P.2d 275, 280 n. 13 (Alaska 1978) (ruling that errors requiring the suppression of evidence may not be raised for the first time on appeal unless they are singularly egregious).

**20.** *See Ritter v. State,* 16 P.3d 191, 193–94 (Alaska App.2001); *Ryan v. State,* 899 P.2d 1371, 1383 (Alaska App.1995) (holding that an attack on an indictment is not dispositive for *Cooksey*

of such exceptional circumstances, we will not review a claim of grand jury error that is raised for the first time on appeal.

■ In this case, Detective Cross's testimony was arguably inconsistent with the grand jury presentation, but it was not substantially favorable to Iyapana, and it does not negate his guilt. Therefore, this testimony does not establish a singularly egregious violation that would require us to review this claim. And there is nothing in this record that would suggest that the State could not obtain another indictment if Iyapana had raised his objection in the superior court. We therefore decline to review this claim of error.

*The jury instruction defining "substantial step" was not plainly erroneous.*

During deliberations, the trial jury sent a note to the court stating: "We have come to an agreement on 3 of the 4 [counts] but are split on the last. The [meaning of] 'substantial step' ... is what's causing the split. If we can't come to an agreement what will happen?"

In response, the judge instructed the jury, "Is there anything the court can do to clarify [the meaning of 'substantial step'?] If not, please review [the instruction on juror deliberations] and try to reach a verdict. You should not concern yourselves with what may happen if you cannot reach a verdict on any of the counts."

Then the jury sent another note that stated, "We need some examples of mere preparation versus substantial step—[the instruction on attempted first-degree sexual assault] doesn't seem to be enough."

Judge McKay then gave jury instruction 32, which clarified that a "person is guilty of an attempt if, with the intent to commit a crime, the person takes a 'substantial step' toward the commission of that crime." The instruction also provided examples of what constitutes a substantial step:

> The law regarding attempts is intended to encompass a wide-range of acts beyond mere preparation. Examples include: lying in wait, searching for or following the potential victim, enticing the victim to go [to] a contemplated place, possessing materials for the commission of the offense, or any overt act done towards its commission. To qualify as a "substantial step", the defendant's act must be strongly corroborative of the actor's criminal purpose.

The instruction went on to clarify that mere preparation is not in itself sufficient to constitute an attempt, but

> acts of a person who intends to commit a crime will constitute an attempt where they themselves clearly indicate a certain, unambiguous intent to commit that specific crime, and in themselves are an immediate and substantial step in the present execution of the criminal design, the progress of which would be completed unless interrupted by some circumstance not intended in the original design.

■ Iyapana timely objected to the portion of the instruction that provided the jury with examples of what constitutes a "substantial step." On appeal, Iyapana argues that the court should have expressly warned the jury that the examples were not related to Iyapana's case. Iyapana also argues that the court should have provided examples of conduct that constitutes "mere preparation."

■ Iyapana did not ask the trial judge to include an additional admonishment to ensure that the jury understood that the examples were unrelated to his case. Because Iyapana's argument on appeal differs from his objection before the trial court, we review his claim for plain error.[21] In the context of jury instructions, "an appellate court will only find plain error where the erroneous instruction or lack of instruction 'creates a

purposes unless a ruling in the defendant's favor would preclude reindictment); *see also Shetters v. State,* 751 P.2d 31, 36 (Alaska App.1988); *Wilson v. State,* 711 P.2d 547, 550 n. 2 (Alaska App.1985) (holding that when a claim of ineffective assistance of counsel is based on the defense attorney's failure to attack the grand jury indictment, the defendant must not only show that the proposed attack on the indictment would have succeeded, but must also show that the state could not have obtained another indictment).

**21.** *See Dobberke v. State,* 40 P.3d 1244, 1247 (Alaska App.2002).

high likelihood that the jury followed an erroneous theory[,] resulting in a miscarriage of justice.' " [22]

■ The term "substantial step" is not defined in AS 11.31.100 or elsewhere in Title 11. The legislative commentary to AS 11.31.100 explains that "mere preparatory conduct is not sufficient to constitute an attempt." [23] This commentary refers to the explanation of the term, "substantial step," that the Alaska Criminal Code Revision Subcommission included in its tentative draft.[24] The tentative draft included a list of examples of substantial steps that might have been deemed "mere preparatory conduct" under former law.[25]

In *Beatty v. State*, we referred to these examples to explain the meaning of the term "substantial step":

> The attempt statute is intended to encompass a wide-range of acts beyond mere preparation. Examples include: lying in wait, searching for or following the potential victim, enticing the victim to go to a contemplated place, possessing materials for the commission of the offense, or any overt act done toward its commission.[26]

We explained that these examples were directly based on the tentative draft.[27]

In Iyapana's case, the challenged portion of the jury instruction was a direct quote from *Beatty*, and the quote from *Beatty* appears to accurately reflect the examples provided in the tentative draft. The supplemental jury instruction, therefore, appears to be a correct statement of law.

Moreover, the supplemental instruction did not appear to create a "high likelihood that the jury followed an erroneous theory." [28] The jury instruction stated that these illustrations were merely examples. There was

little risk that the jury would have followed an erroneous theory based on these examples, since none of the examples resembled the circumstances of Iyapana's case.

■ Iyapana also argues that the court should have provided examples of conduct that constituted "mere preparation." Iyapana concedes that there are no cases providing examples of what constitutes "mere preparation," but argues that the court should have gathered examples to illustrate cases where courts have found a lack of sufficient evidence to constitute a substantial step.

Iyapana did not ask the superior court to include examples of "mere preparation," so his argument must be reviewed for plain error. But, even in this appeal, Iyapana does not identify any examples of "mere preparation" that the superior court should have included. And the evidence did not suggest that Iyapana had committed some ambiguous act of "mere preparation"; T.S.'s uncontradicted testimony suggested misconduct that was much closer to a completed act of anal penetration. We conclude that the lack of any instruction on this aspect of the attempt statute was not plain error.

*There was sufficient evidence to support Iyapana's convictions for first-degree sexual assault and attempted sexual assault.*

At the close of the State's case, Iyapana moved for a judgment of acquittal on the charge of first-degree sexual assault (for penetrating T.S.'s mouth with his penis) and the charge of attempted first-degree sexual assault (for attempting to penetrate T.S.'s anus with his penis). Judge McKay denied Iyapana's motion. Iyapana renews these arguments on appeal. When we review the sufficiency of the evidence to support these convictions, we view the evidence in the light

**22.** *Id.* (quoting *In re Estate of McCoy,* 844 P.2d 1131, 1134 (Alaska 1993)).

**23.** Commentary on the Alaska Revised Criminal Code, Senate Journal Supp. No. 47 at 5, 1978 Senate Journal 1399.

**24.** Commentary on the Alaska Revised Criminal Code, Senate Journal Supp. No. 47 at 5, 1978 Senate Journal 1399 (referring to Alaska Criminal Code Revision, Part II, at 72–74 (Tent. Draft 1977)).

**25.** *See Avila v. State,* 22 P.3d 890, 893–94 (Alaska App.2001).

**26.** 52 P.3d 752, 755–56 (Alaska App.2002).

**27.** *Id.*

**28.** *Dobberke,* 40 P.3d at 1247 (quoting *In re Estate of McCoy,* 844 P.2d at 1134).

most favorable to the verdict and ask whether a reasonable juror could have concluded that the defendant was guilty beyond a reasonable doubt.[29]

To prove first-degree sexual assault, the State was required to show that Iyapana used his penis to penetrate T.S.'s mouth without T.S.'s consent.[30] On this charge, T.S. specifically testified that he regained consciousness at one point during the attack and realized that Iyapana's penis was in his mouth. In response, Iyapana claims that T.S. was intoxicated and not fully conscious. But when we review the sufficiency of the evidence, we do not weigh the evidence or assess witness credibility on appeal: these are questions for the trial jury.[31]

In addition to T.S.'s testimony, there was substantial circumstantial evidence from which a reasonable juror could infer that Iyapana forced T.S. to engage in fellatio. Anchorage police officers testified that, when they found T.S. in the bathroom of the apartment, he was crying and informed the police that Iyapana forced his penis into his mouth. Detective Vandervalk testified that eighty to ninety percent of Iyapana's thighs were covered in T.S.'s blood. Dr. Bryan Wachter testified that there was bruising and swelling on the hard and soft palates on the inside of T.S.'s mouth, and that there was swelling in T.S.'s throat. Viewing this evidence in the light most favorable to the verdict, there was sufficient evidence from which a reasonable juror could conclude that Iyapana penetrated T.S.'s mouth without his consent.

Iyapana also argues that there was insufficient evidence to support his conviction for attempted first-degree sexual assault. To prove this charge, the State was required to show that, with the intent to forcibly penetrate T.S.'s anus, Iyapana engaged in conduct constituting a substantial step toward the commission of the offense.[32] On this count, T.S. testified that Iyapana was "doing it to [his] ... butt" and "making love to [him]."

T.S. later clarified that he felt Iyapana's "penis in [his] behind," but was not sure if Iyapana actually penetrated his anus. Iyapana again claims that T.S.'s statements were inconsistent and argues that we should reweigh the credibility of T.S.'s testimony, but credibility was a question for the trial jury.

There was also circumstantial evidence that supported T.S.'s testimony. When the police arrived, T.S. informed them that Iyapana had forced his penis into T.S.'s mouth and anus. There were stains on the waistband of T.S.'s pants and undershorts that appeared to be both blood and possibly fecal matter. And Iyapana's penis had chunky brown material and blood-tinged mucous on it.

Viewed in the light most favorable to the verdict, this evidence was sufficient for a reasonable juror to conclude that Iyapana had, at the very least, attempted to anally penetrate T.S. without his consent. We conclude that Iyapana's convictions for first-degree sexual assault and attempted first-degree sexual assault are both supported by sufficient evidence.

*The sentencing judge was not required to merge Iyapana's convictions for first-degree sexual assault and attempted first-degree sexual assault.*

Iyapana argues that the trial court should have merged his sentences for first-degree sexual assault (for penetrating T.S.'s mouth with his penis) and attempted first-degree sexual assault (for attempting to penetrate T.S.'s anus with his penis). Iyapana claims that both sexual assault counts arose out of the same, continuous transaction, that there was no evidence that any time elapsed between these sexual assaults, and that both acts occurred as part of the same physical assault.

The double jeopardy clause "protects against multiple punishments for the same offense."[33] To determine whether sep-

---

**29.** *Morrell v. State,* 216 P.3d 574, 576 (Alaska App.2009).

**30.** *See* AS 11.41.410(a)(1).

**31.** *Morrell,* 216 P.3d at 576.

**32.** *See* AS 11.31.100(a); AS 11.41.410(a)(1).

**33.** *Calder v. State,* 619 P.2d 1026, 1028 (Alaska 1980) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)).

arate convictions violate double jeopardy, we examine whether the statutory elements, in light of the facts of the case, involve differences in intent or conduct.[34] Separate convictions and sentences arising from a single criminal transaction are permissible "when the statutory provisions that have been violated protect societal interests that are significantly different."[35]

In the context of sexual assaults that occur as part of a single criminal episode, "[s]eparate convictions for multiple acts of penetration involving different openings of the victim's or the defendant's body are permissible."[36] The policy behind this rule is that different types of penetration constitute different forms of indignity and violation, and therefore merit separate punishments.[37]

For example, in *Rodriquez v. State*, Carlos Rodriquez was convicted of twenty-five offenses, primarily for lewd and lascivious acts toward children.[38] One set of convictions related to an evening when Rodriquez performed fellatio twice on thirteen-year-old T.J.P., once in Rodriquez's living room and once in his sauna.[39] After initially resisting, T.J.P. performed fellatio on Rodriquez in the sauna.[40] Rodriquez then forcibly sodomized T.J.P.[41] Another set of convictions related to Rodriquez's actions toward S.D.W.[42] Rodriquez handcuffed S.D.W. and performed fellatio on S.D.W. against his will.[43] S.D.W. then

resisted while Rodriquez attempted to sodomize him.[44]

Rodriquez first argued that his act of fellatio on T.J.P. should merge with the sodomy conviction.[45] On appeal, this court held that "the fellatio performed on T.J.P. was not a necessary or inevitable predecessor to the later sodomy."[46] We also concluded that "the later sodomy count involved a complete change in the character of the interaction" since the fellatio count involved "reluctant cooperation" by T.J.P. and the later sodomy involved the use of force.[47] We accordingly concluded that the acts were sufficiently severable to allow for the entry of two convictions.[48]

Rodriquez also claimed that the conviction related to the fellatio on S.D.W. should merge with the attempted sodomy conviction.[49] This court concluded that "the attempted rape charge was not based on acts leading up to the subsequent rape charge."[50] The attempted rape "was not an initial step or an inherent part of the completed rape because the attempt followed the earlier completed rape."[51] We therefore concluded that Rodriquez could be convicted for two separate offenses.[52]

Similarly, in *Yearty v. State*, this court examined whether an act of completed fellatio should merge with an unsuccessful effort to engage in anal penetration.[53] Richard Yearty confronted twelve-year-old J.L. near

34. *State v. Dunlop*, 721 P.2d 604, 608 (Alaska 1986).

35. *Yearty v. State*, 805 P.2d 987, 993 (Alaska App.1991).

36. *Johnson v. State*, 762 P.2d 493, 495 (Alaska App.1988) (citing *Rodriquez v. State*, 741 P.2d 1200 (Alaska App.1987)).

37. *Erickson v. State*, 950 P.2d 580, 587 (Alaska App.1997).

38. 741 P.2d at 1202.

39. *Id.*

40. *Id.*

41. *Id.*

42. *Id.* at 1208.

43. *Id.*

44. *Id.*

45. *Id.* at 1207.

46. *Id.*

47. *Id.*

48. *Id.*

49. *Id.* at 1208.

50. *Id.*

51. *Id.*

52. *Id.*

53. 805 P.2d at 993.

Goose Lake in Anchorage.[54] Yearty then pulled J.L. off his bike and dragged him into the woods.[55] Yearty pulled down J.L.'s pants and proceeded to perform fellatio on him.[56] Yearty ultimately pulled his own pants down and unsuccessfully attempted to insert J.L.'s penis into his anus.[57] Yearty was convicted of first-degree sexual assault and first-degree sexual abuse of a minor for performing fellatio on J.L., and attempted first-degree sexual assault and attempted first-degree sexual abuse of a minor for the attempted anal penetration.[58]

Yearty argued that his convictions for attempted sexual assault and abuse should merge with his convictions for the corresponding completed offenses.[59] But we concluded that the two attempt counts involved different conduct than the two completed offenses: two of the counts were for the completed act of fellatio and two of the counts were for Yearty's unsuccessful efforts at anal intercourse.[60] We held that, "[b]ecause Yearty's attempt convictions were based on distinctly different types of sexual penetration than those involved in his sexual assault and abuse convictions, the attempts do not merge with the completed offenses."[61]

In *Erickson v. State*, Brian Erickson was convicted of four counts of second-degree sexual abuse of a minor.[62] The four counts involved one victim, but four different types of sexual penetration that occurred as part of a single incident.[63] Erickson argued that the court should reverse the holding in *Yearty* that a defendant who perpetrates distinct types of sexual penetration during a single assaultive episode can be convicted separately for each type of sexual penetration.[64] Erickson also argued that an appellate court is not permitted to create double jeopardy rules that will govern all future cases that present the same double jeopardy issue.[65]

This court noted that *Yearty* established a rule of general application—specifically, *Yearty* held that distinct types of sexual penetration will support separate convictions for sexual assault.[66] The court explained that, under the holding in *Yearty*, "a separate offense of second-degree sexual abuse of a minor is committed whenever the defendant engages in a distinct form of sexual penetration with the victim."[67] In Erickson's case, the jury found that he engaged in four distinct types of sexual penetration.[68] When "several [distinct types of sexual penetration] occur in the course of a single incident, the *offense* prohibited by the statute has been violated several times over."[69] The court therefore held that Erickson was properly convicted of four counts of second-degree sexual abuse of a minor.[70]

Iyapana relies on *Oswald v. State*[71] for his argument that his convictions for first-degree sexual assault and attempted first-degree sexual assault should merge. In *Oswald*, the defendant digitally penetrated the victim's vagina and subsequently engaged in forced vaginal intercourse.[72] The state conceded that the act of digital penetration was an initial step leading to the act of vaginal intercourse, and therefore could not support a

---

54. *Id.* at 989.

55. *Id.*

56. *Id.*

57. *Id.*

58. *Id.* at 992.

59. *Id.* at 993.

60. *Id.*

61. *Id.* at 994.

62. 950 P.2d at 581–82.

63. *Id.* at 582.

64. *Id.*

65. *Id.*

66. *Id.* at 583.

67. *Id.* at 584.

68. *Id.*

69. *Id.* (quoting *Dunlop*, 721 P.2d at 609).

70. *Id.*

71. 715 P.2d 276, 280 (Alaska App.1986), *overruled in part by Yearty*, 805 P.2d at 995 n. 3.

72. *Id.* at 280–81.

separate conviction.[73] We accepted the state's concession that only one conviction and sentence was appropriate.[74]

The problem with Iyapana's argument is that, unlike *Oswald*, Iyapana's assault involved a forced penetration or attempted penetration of two different openings of T.S.'s body. In *Yearty*, we noted that there was "a potential inconsistency between *Rodriquez*, which upheld separate convictions for different types of sexual penetration committed during a single episode, and *Oswald v. State*, which held [that] separate convictions [were] impermissible for a single episode involving an act of digital penetration and an act of genital intercourse."[75] We then overruled *Oswald* to the extent that the holding was inconsistent with our decision in *Rodriquez*, which allowed separate convictions for sexual penetration of different bodily openings during the same incident.[76]

In this case, we conclude that the result is controlled by *Erickson* and *Yearty*. *Yearty* established the general rule that distinct types of sexual penetration that occur as part of a single criminal event will support separate convictions for sexual assault.[77] The jury verdicts in this case establish that Iyapana sexually penetrated T.S.'s mouth and separately attempted to penetrate T.S.'s anus. We therefore hold that Iyapana was properly convicted of two separate offenses for these two different types of sexual penetration.

### Conclusion

We therefore AFFIRM the superior court's judgment and sentence.

MANNHEIMER, Judge, concurring.

I write separately to explain my understanding of the relationship between this Court's decisions in *Oswald v. State*, 715 P.2d 276 (Alaska App.1986), *Rodriquez v. State*, 741 P.2d 1200 (Alaska App.1987), and *Yearty v. State*, 805 P.2d 987 (Alaska App.1991).

In *Oswald*, this Court ruled that the defendant's digital penetration of the victim's vagina, followed closely by a penile penetration of the victim's vagina, constituted only a single act of sexual assault. This Court's discussion of this issue is fairly terse, but it appears that the Court's primary rationale for merging the two counts was that the act of digital penetration was essentially a preparatory act that immediately preceded, and led up to, the act of penile penetration. Here is this Court's entire discussion of this issue:

> The state concedes that Count I encompassed foreplay leading to the act of sexual intercourse charged in Count II, and consequently could not support a separate conviction. *See Tookak v. State*, 648 P.2d 1018 (Alaska App.1982). The state asks that the conviction for Count I be vacated, and Oswald joins in this request. We have carefully considered the record and conclude that the parties' position is correct, and that the first act of digital penetration in effect merged with the first act of genital penetration. Only one conviction and sentence was therefore appropriate. On remand, the trial court should correct the judgment to reflect only one conviction on Counts I and II.

*Oswald*, 715 P.2d at 280.

The following year, in *Rodriquez v. State*, 741 P.2d at 1207–08, this Court held that a defendant can be separately convicted and sentenced for acts of sexual assault or sexual abuse involving different types of sexual penetration, even when those acts of penetration occur during the same criminal episode.

As this Court acknowledged in footnote 3 of the *Yearty* opinion, 805 P.2d at 995, there is a potential inconsistency between *Rodriquez* and *Oswald*. In *Oswald*, this Court appeared to say that any "preparatory" acts of sexual penetration will merge with a defendant's ultimate act(s) of sexual penetration. But in *Rodriquez*, this Court held that separate convictions are proper when the defendant's acts of sexual penetration

**73.** *Id.* at 280.

**74.** *Id.*

**75.** *Yearty*, 805 P.2d at 995 n. 3 (citation omitted).

**76.** *Id.*

**77.** *Id.* at 994; *Erickson*, 950 P.2d at 583.

involve different *types* of penetration, even though some of those acts of penetration might be viewed as "preparatory".

To resolve this potential inconsistency, the *Yearty* majority declared that *Oswald* was overruled "[t]o the extent that *Oswald* is inconsistent with our subsequent decision in *Rodriquez*". *Yearty*, 805 P.2d at 995 n. 3.

It is important to note that *Oswald* has been overruled *only* to the extent that it is inconsistent with *Rodriquez*—that is, only to the extent that *Oswald* would apparently require a merger of counts even when a defendant's preparatory act of sexual penetration involved a different *type* of penetration from the defendant's ultimate act of sexual penetration.

Thus, even after *Rodriquez* and *Yearty*, the result reached in *Oswald* remains correct: the defendant's preparatory act of penetrating the victim's vagina with his finger merged with the defendant's ensuing act of penetrating the victim's vagina with his penis—because the first penetration was preparatory to the second, and because both acts involved penetration of the same orifice.