NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter*. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections @ akcourts.us.*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

LOUIE C. DULIER SR.,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12557
Trial Court No. 1JU-15-00809 CR

O P I N I O N

No. 2659 — October 11, 2019

Appeal from the Superior Court, First Judicial District, Juneau, Philip M. Pallenberg, Judge.

Appearances: Susan Orlansky, Reeves Amodio LLC, under contract with the Public Defender Agency, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. RuthAnne B. Bergt, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, Harbison, Judge, and Coats, Senior Judge.[*]

Judge HARBISON.

---

[*]    Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

Louie C. Dulier Sr. was convicted of second-degree assault and third-degree assault after Dulier, during an argument outside a Juneau bar, pulled out his flare gun, held it to a man's neck, and fired. Both assault charges required the State to prove that Dulier caused physical injury "by means of a dangerous instrument."[1] At trial, the State argued that Dulier's flare gun was a dangerous instrument because "under the circumstances in which it is used [or] attempted to be used . . . [it is] capable of causing death or serious physical injury."[2] Dulier raises three arguments on appeal, all relating to whether Dulier's flare gun was a dangerous instrument.

First, Dulier argues that the State presented insufficient evidence to prove that he used the flare gun in a manner that was capable of causing death or serious physical injury. Second, Dulier argues that the superior court committed plain error by failing to *sua sponte* instruct the jury that it was required to find that Dulier actually used the flare gun in a manner that created a substantial risk of death or serious physical injury, as opposed to finding that a flare gun could theoretically be used in a manner that created a substantial risk of death or serious physical injury. Finally, Dulier argues that the court's failure to issue a special instruction to the jury was compounded when the superior court failed to *sua sponte* correct a statement by the prosecutor during closing argument that appeared to endorse this impermissible second theory — *i.e.*, that a flare gun was a dangerous instrument if it could be used in a manner that created a substantial risk of death or serious physical injury.

For the reasons explained in this opinion, we reject Dulier's arguments and affirm his convictions.

---

[1] AS 11.41.210(a)(1) and AS 11.41.220(a)(1)(B), respectively.

[2] *See* AS 11.81.900(b)(15)(A).

*Factual background*

The trial testimony established that on the evening of August 1, 2015, Dulier and John Sears got into an argument when they were smoking cigarettes outside the Rendezvous Bar in Juneau. Sears and Dulier had a heated exchange before Sears went back inside.

Later, Sears and another patron went outside again. Dulier, who was still outside, stepped up to Sears, held a flare gun to Sears's neck, and fired it. A bar patron grabbed Sears by the shoulder just as the flare gun went off, causing Sears to move to the left just before the flare hit him. The flare impacted the front of Sears's neck, next to his Adam's apple. Sears testified that if the patron had not intervened, pushing him to the side, "I wouldn't be sitting here, because my head wouldn't have turned, and [the flare] would've went straight into my neck and stuck in there."

Instead, the flare ricocheted off Sears's neck, hit the wall of the bar, and then landed on the bar's welcome mat, where it sat burning for a moment before another patron kicked it out toward the street. An officer who responded to the incident testified that the flare left a "melted scorch mark on the . . . all-weather mat in front of the [bar]."

When the officers arrived at the bar, Sears had a "large bloody powder burn" and welt on his neck. After speaking to the police, Sears went to the hospital for treatment. In addition to a bad burn, Sears had a large bruise and a bloody gouge in his neck. He was prescribed antibiotics and a painkiller. After the incident, Sears had a hard time talking, and the inside of his throat was swollen for four or five days. It took about three weeks for the wound to heal.

*There was sufficient evidence to support the "dangerous instrument" element of the assault convictions*

Dulier was convicted of second-degree assault and third-degree assault, both of which include the element that the defendant caused physical injury "by means of a dangerous instrument."[3] The phrase "dangerous instrument" is defined by statute as, *inter alia*, "anything that, under the circumstances in which it is used, attempted to be used, or threatened to be used, is capable of causing death or serious physical injury."[4]

On appeal, Dulier argues that the evidence was insufficient to establish that the flare gun was used in a manner capable of causing death or serious physical injury because he aimed the flare gun "at a particular spot, with little realistic risk of hitting another more vulnerable spot, such as Sears's eye." Dulier asserts that there was no evidence that the flare gun, when used in that manner, could have caused any greater harm than what actually happened to Sears.

When a defendant challenges the sufficiency of the evidence to support a criminal conviction, an appellate court is required to view the evidence, and all reasonable inferences that can be drawn from that evidence, in the light most favorable to upholding the jury's verdict.[5] Viewing the evidence in this light, the court then asks

---

[3]  AS 11.41.210(a)(1) and AS 11.41.220(a)(1)(B), respectively.

[4]  AS 11.81.900(b)(15)(A). The definition of "dangerous instrument" also includes "any deadly weapon," which, in turn, includes any "firearm." AS 11.81.900(b)(17). The State argues on appeal that a flare gun is a "firearm," but it did not make this argument below. In fact, during the trial, the prosecutor told the jury that a flare gun is not a firearm. Because we are able to decide this case without reaching the State's argument that a flare gun is a "firearm" we decline to resolve this question in the context of this appeal.

[5]  *Iyapana v. State*, 284 P.3d 841, 848-49 (Alaska App. 2012).

whether a reasonable juror could find that the State had proved the defendant's guilt beyond a reasonable doubt.[6]

Here, a reasonable juror could find that Dulier used the flare gun in a manner that created a substantial risk that Sears would suffer serious physical injury, *i.e.*, "physical injury that causes serious and protracted disfigurement, protracted impairment of health, [or] protracted loss or impairment of the function of a body member or organ[.]"[7]

At trial, one of the responding police officers explained how a flare gun works:

> [I]t kind of works like just a regular shotgun shell. There's a powder charge behind the flare and when you fire it off, that powder charge launches the flare and ignites it. And so the flare is essentially burning as soon as it leaves the barrel of whatever you've launched it from . . . .

Additionally, Sears testified that if the other patron had not pushed him, the flare would have gone straight into his neck rather than ricocheting off the side of his neck. And even with this last-second intervention, Sears still had significant injuries: a bloody gouge, a burn, a bruise on his neck, and a swollen throat and difficulty speaking for several days.

This evidence, viewed in the light most favorable to the jury's verdict, was sufficient to establish that Dulier used the flare gun in a manner that created a substantial risk of serious physical injury.

---

[6] *Id.* at 849.

[7] AS 11.81.900(b)(58)(B).

*The trial court did not commit plain error by failing to give a <u>Konrad</u> instruction and failing to correct one instance in which the prosecutor misstated the law*

Dulier raises two more claims of error on appeal. First, Dulier argues that the trial court erred by not *sua sponte* giving the jury a special instruction that it could only find that Dulier's flare gun was a dangerous instrument if it found that Dulier used it in a manner "that actually created a substantial risk of death or serious physical injury."[8] Second, Dulier argues that the prosecutor's closing argument compounded this error by suggesting to the jury that it could convict Dulier if it concluded that a flare gun *could* be used in a manner that created a substantial risk of death or serious physical injury.

Dulier argues that these two errors, when combined, create a serious risk that the jury convicted Dulier under the legally impermissible theory that Dulier's flare gun was a dangerous instrument because it *could* be used in a manner that created a substantial risk of death or serious physical injury.

Dulier, however, did not raise these issues below. We review unpreserved claims of error under the plain error doctrine.[9] To show plain error, a defendant must show that the error "(1) was not the result of intelligent waiver or a tactical decision not to object; (2) was obvious; (3) affected substantial rights; and (4) was prejudicial."[10]

For the reasons we explain, we agree with Dulier that a special jury instruction clarifying the definition of a "dangerous instrument" would have been appropriate in this case. We also agree that the prosecutor misstated the law when he

---

8  *Bowlin v. State*, 2015 WL 5918178, at *3 (Alaska App. Oct. 7, 2015) (unpublished).

9  *Adams v. State*, 261 P.3d 758, 764 (Alaska 2011).

10  *Id.*

suggested that a flare gun was a dangerous instrument because it *could* be used in a manner that created a substantial risk of death or serious physical injury. We do not agree, however, that these errors, either singly or in combination, rise to the level of plain error.

In *Konrad v. State*, this Court held that when a defendant commits an assault with an allegedly dangerous instrument that is not a deadly weapon, and where no serious physical injury occurs, "the possibility that the grand jury might decide the instrument's potential for causing injury as an abstract or hypothetical matter is . . . sufficiently great to require that an express instruction be given."[11] Our decision in *Konrad* was limited to grand jury proceedings, but we have since applied *Konrad* to petit juries in an unpublished case, *Bowlin v. State*.[12]

As we stated in *Bowlin*, the reasoning in *Konrad* applies equally to the petit jury context, and therefore trial courts should provide the instruction when the circumstances require it.[13] This instruction ensures that the jury finds, based on the evidence in the case before it, "that the defendant used the instrument in a manner that actually created a substantial risk of death or serious physical injury."[14] Given our decision in *Bowlin*, we agree with Dulier that a *Konrad* instruction would have been appropriate in his case.

We also agree with Dulier that the prosecutor briefly misstated the law during closing argument. This occurred when the prosecutor told the jury that "if you can [use a flare gun to shoot out a person's eye], then it's a dangerous instrument." This

---

[11]   *Konrad v. State*, 763 P.2d 1369, 1374-75 (Alaska App. 1988).

[12]   *Bowlin*, 2015 WL 5918178, at *3.

[13]   *Id.*

[14]   *Id.* (citing *Konrad*, 763 P.2d at 1375).

statement erroneously suggested that the jury could find that a flare gun is a dangerous instrument if it *can* be used to shoot out an eye rather than focusing the jury's attention on the *manner* in which Dulier used the flare gun in this particular case.

We conclude, however, that these errors do not rise to the level of plain error given the way this case was argued to the jury. We note that, at trial, the parties were primarily focused on Dulier's claim that he acted in self-defense. As a result, neither attorney spent a significant amount of time addressing the "dangerous instrument" definition in their closing argument. However, when they did address the "dangerous instrument" element, their discussions appropriately focused on the manner in which the flare gun had been used, rather than on hypothetical ways that it could have been used.

For example, the prosecutor began her discussion of this element by referencing a movie in which a person was killed with a pen, explaining, "I've got a billion Bics on my desk but . . . you're looking at the way that something is used to determine whether or not it's a dangerous instrument." She then asked, "[s]o, what evidence do you have of that in this case?" The prosecutor then pointed out that Dulier's flare gun operates by the same gunpowder blast mechanism that a shotgun uses, and that the flare burned Sears when it hit him in the neck. She further argued:

> Is that fiery, phosphorous shell capable of causing death or serious physical injury? Well, it depends on how it's used. Which is how dangerous instrument is defined. As Mr. Sears testified, if I hadn't turned to the left, it would've hit me directly on the neck and then I don't know what would've happened. He was afraid of that possibility.

These arguments properly focused the jury's attention on the manner in which the flare gun was used in this case.

As discussed above, there was one portion of the prosecutor's closing argument that was improper. But the defense attorney directly addressed the misstatement in her closing argument and corrected any misunderstanding it may have generated:

> Now, [the prosecutor] was talking about how you can shoot somebody's eyeballs out, but that's not the situation we're dealing with here. This is not a situation where Mr. Dulier had Mr. Sears' mouth open and shot it down his gullet. Like that could kill someone, but the way it was used, no, we saw what happened. You can't be killed in the way that — or cause even serious physical injury in the way that it was used.

In other words, the prosecutor's sole misstep was addressed and corrected in the defense's closing argument. And on rebuttal, the prosecutor did not repeat her mistake.

Thus, when the evidence and arguments are viewed as a whole, they do not justify a finding that there was "a high likelihood that the jury followed an erroneous theory[,] resulting in a miscarriage of justice."[15] Nor do they justify a finding that the jury would have been misled by the isolated misstatement the prosecutor made during her initial closing argument. Accordingly, we find no merit to Dulier's plain error arguments on appeal.

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

[15] *Iyapana v. State*, 284 P.3d 841, 847-48 (Alaska App. 2012) (alteration in original) (internal quotation marks omitted) (quoting *Dobberke v. State*, 40 P.3d 1244, 1247 (Alaska App. 2002)).